Margaret Lane, Plaintiff in Error, *v.* Soulard et al., Defendants in Error.

ERROR TO ST. CLAIR·

A married woman cannot, except by express enactment, convey her fee-simple title to real estate.

From 1845 to 1847 there was no statute in this State, enabling married women without the State to convey their lands lying within it.

The legislature cannot give effect to conveyances made by married women out of this State, during the two years when they were not authorized to make such conveyances.

The bill alleges that Soulard conveyed certain property in St. Louis to trustees, to hold in trust for appellant, a married woman, provided she shall pay out of her separate estate, the sum of $9,000, payable in four instalments. That said Soulard agreed to complete the improvements then in progress, by the 1st October, 1846. That to secure the payment of the first instalment more fully, being $2,000, to be paid 1st October, 1846 ; the appellant and her then husband executed a deed of trust to a part of the defendants, as trustees for certain lands in Illinois, owned in her right, which authorized the sale of said lands, on the failure to pay said first instalment; and out of the proceeds to pay, first, the cost, and then the sum of $2,000. That upon the failure to pay any or all of the instalments, or the interest out of the separate estate of said Margaret B. Lane, the property in St. Louis should be sold for the payment thereof.

That said Soulard failed to complete said improvements in the time and according to his contract, and that at the March term of the St. Louis circuit court in the year 1851, said Soulard obtained a decree for the sale of the property in St. Louis, under which decree said property was sold and purchased by said Soulard for the sum of $6,600; that said first instalment formed a part of said decree, and that the proceeds of said sale ought to be applied to the discharge of said instalment; that she was a married woman at the time of the execution of the deed of trust for lands in Illinois; that the consideration of the deed of trust has failed, and that it would not be just to allow Soulard to enforce the payment and still hold the property in St. Louis. The bill further charges that her land has been sold for taxes, and calls upon the court to require the trustees to

proceed at law to recover said property, and to enjoin the sale until the title is settled. The answer admits the contract as set out by appellant, alleges that he has completed his contract, admits the proceedings in St. Louis, and sets up the decree in St. Louis as conclusive as to the amount due — to which there is a replication.

This cause was heard before UNDERWOOD, Judge, at August term, 1853, of the St. Clair Circuit Court.

NINIAN and BENJAMIN EDWARDS, for plaintiff in error.

J. GILLESPIE and G. TRUMBULL, for defendants in error.

CATON, J. Although many points were raised and ably argued in this case, we shall confine ourselves in the decision to one single question, which is unavoidably decisive of the whole case. The Revised Statutes repealed all former laws on the subject of conveyances of real estate, · and authorized married women within this State to convey their land by joining with their husbands and acknowledging the deeds in a specified way; but no authority was given for married women residing out of this State to convey their lands lying within it. The law thus continued till the act of the 22d of February, 1847, which authorizes married women without the State to convey their lands lying within this State.

In April, 1846, Mrs. Lane with her husband, executed this deed of trust, in the city of St. Louis, where she then resided. This deed of trust conveys the premises in question to certain trustees, to secure the payment of certain moneys to Soulard. The question is, whether this was a valid conveyance of the premises. We shall not stop to adduce authorities to show, that a *feme covert* cannot, except she be authorized by an express statute, convey her fee-simple title to real estate by deed. ·She is incapable of doing so at the common law, and hence there can be no law for it, unless it be by statute. Without a statute, she is as incapable of conveying by deed as she is by word of mouth. From 1845 to 1847, there was no statute enabling married women without the State to convey their lands lying within it. This deed having been made without the authority of law, and against law, was simply void; as void as if it had been expressly prohibited by a positive statute. The second section of the law of 1847, provides that a *feme covert* not residing in this State, being above the age of eighteen years, may join her husband in the execution of deeds, &c., of lands lying within this State, and that she shall thereby be

barred of her right in like manner as if she was sole, and the acknowledgment of such deed may be made in the same manner as if she was sole, and the section concludes: " And the provisions of this section shall apply to deeds, mortgages, coneyancevs, powers of attorney, and other writings, heretofore, as well as those which may hereafter be executed." The third section provides that such deeds, &c. which had been or might thereafter be executed without the State and within the United States, and acknowledged or proved in conformity to that statute, should be admitted to record, and read in evidence without further proof. Admitting that here was the deliberate purpose on the part of the legislature, to give effect to convey- ances made by married women out of the State, during the two years when they were not authorized to make such conveyances, and the question arises, Had they authority to make such deeds operative? We cannot bring our minds to entertain a doubt that the legislature had no such authority. Notwithstanding this deed of trust, Mrs. Lane was, on the 21st of February, 1847, as much the absolute owner of this land as if she had never made such a deed. That deed affected her right to it in no way whatever, any more than as if it had continued a blank piece of paper, or her name had been forged to it by another, instead of being written by herself. She was no more author- ized by law to put her name to that deed, so far as giving it effect was concerned, than a stranger had to write it for her. If the legislature could give effect to a deed thus executed against the provisions of the law, then they could make a deed at once which would convey the title. If they could by force of the law make her title pass where none had passed before, then it is the law which passes the title and not the deed. It is the act of the legislature and not her own act, which deprives her of her land. If, on the 21st of February, she was the absolute owner of this land, unaffected, uninfluenced, unprejudiced by any thing which she had previously done or suffered, and on the 23d of February, she had ceased to own it, by whose act had the title passed? Not by her own act, certainly, for she had done nothing in the mean time or previously, which could trans- fer the title. How then had it passed? By the act of the legislature alone. She had not done it, for she could not in any way, shape, or form, pass the title; but the legislature had taken her land from her and given it to others. This they are expressly prohibited from doing, by the constitution.

In support of the constitutionality of this law, we have been referred to several decisions in Pennsylvania, and in some other States, and in the supreme court of the United States. Nor is

11*

this the first time that our attention has been called to these cases. Without, at the present time, expressing any opinion upon the propriety of those decisions, it is sufficient to say, that they are upon cases not like this; but to sustain this law we should have to go further than any of those courts have gone, in sustaining legislative control over titles to real estate. Indeed, the protection intended to be secured by the constitution would be quite thrown down, and they would be left to dispose of the titles of individuals as they please. In those cases the law had authorized the parties to convey, but the conveyances had been imperfectly executed or acknowledged, and the curative laws had been passed to remedy such defects, and to confirm contracts which had been authorized by law to be made. Upon this ground all those decisions were made. But the case before us is quite different. Here, the law authorized no such contract whatever. In each of those cases there was an imperfect or defective execution of a power. Here is a total want of power. There, there was a capacity to act and an attempt made to exercise that capacity. Here was a total incapacity to act, and whatever was attempted to be done, was in direct violation of the law. Here, the party had attempted to do nothing which the law had authorized her to do. Here, there was no defect to remedy, but the entire act was void, not for the want of form, but for the want of power; and we are very clearly of opinion that the legislature could not give effect to a conveyance, which the law prohibited her from making, and thus transfer a title by the mere farce of a legislative act.

The decree of the circuit court must be reversed, and a decree entered in this court, enjoining the trustees named in the deed of trust from proceeding to sell under that deed.

*Decree reversed.*