## CHRIS G. STEGER

208   236
e209   178

### *v.*

## THE TRAVELING MEN'S BUILDING AND LOAN ASSN. *et al.*

*Opinion filed February 17, 1904—Rehearing denied April 6, 1904.*

1. DEFINITIONS—*equities defined.* Equities are rights which are established and enforced in accordance with principles of equity jurisprudence, under some general principle or acknowledged rule governing courts of equity.

2. LIS PENDENS—*purchaser of securities pendente lite takes them subject to equities against assignor.* A purchaser of securities *pendente lite* takes them subject to all equities existing against them in the hands of his assignors and subject to any decree which might have been entered against such assignors.

3. STATUTES—*right of legislature to enact curative statutes.* The legislature may ratify and confirm any act which it might lawfully authorize in the first instance, where the defect arises out of the neglect of some legal formality and the curative act interferes with no vested right.

4. MORTGAGES—*act of 1903, legalizing acknowledgments taken by officer of corporation, is not an exercise of judicial power.* The act of 1903, (Laws of 1903, p. 120,) legalizing prior acknowledgments of deeds or mortgages taken before an officer or stockholder of the corporation grantee or mortgagee, is not invalid, as being an exercise of judicial power by the legislature.

5. SAME—*the act of 1903, legalizing prior acknowledgments, does not violate the obligation of contract.* The act of 1903, legalizing prior acknowledgments of deeds or mortgages taken before an officer or stockholder of the corporation grantee or mortgagee, does not, as between such grantee or mortgagee and the grantor or mortgagor, violate the obligation of contract.

6. SAME—*act of 1903, legalizing prior acknowledgments, has no effect upon vested rights.* The act of 1903, legalizing prior acknowledgments taken before an officer of the corporation grantee or mortgagee, cannot deprive innocent third parties of intervening vested rights and transfer them to the corporation, since this would constitute a taking of property without due process of law.

7. VESTED RIGHTS—*a mortgage lien and a judgment lien are vested rights.* A mortgage lien and a judgment which has become a lien are vested rights in property, and where the same were so vested before the passage of the act of 1903, legalizing the acknowledgment of a prior mortgage taken before an officer of the corporation mortgagee, they remain unaffected by such act.

8. Homestead—*when money loaned is not a debt incurred for the improvement of homestead.* Money loaned to enable the borrower to pay a contractor to build a residence is not, as between the lender and borrower, a debt incurred for the improvement of the homestead, within the meaning of the law, although, as between the contractor and the borrower, the debt is of such character.

9. Masters in chancery—*master's report should not contain lengthy arguments.* The master's conclusions of law and fact should be clearly and concisely stated, and the report should not contain lengthy arguments and quotations from decisions of the courts.

Appeal from the Superior Court of Cook county; the Hon. Jesse Holdom, Judge, presiding.

Frederick Mains, for appellant.

Ives, Mason & Wyman, C. Arch Williams, J. Erb, and Cyrus J. Wood, for appellees.

Mr. Justice Cartwright delivered the opinion of the court:

The only question to be decided on this appeal is one of priority between liens held by the appellant and by the Traveling Men's Building and Loan Association, one of the appellees, upon a homestead estate in a lot in Chicago. The property, at the time the liens were created, was the homestead of Joseph Strozewski. The lien of the building association on the lot is by virtue of a trust deed executed June 18, 1894, by Joseph Strozewski and Marcianna, his wife, to the American Trust and Savings Bank, trustee, to secure an indebtedness in the sum of $3300 for money loaned, with interest and penalties. The acknowledgment of this trust deed was taken by George J. Kuebler, a notary public, who was secretary of the building association and a stockholder therein, and for that reason the estate of homestead was not released and the trust deed created no lien upon it. (*Ogden Building and Loan Ass. v. Mensch,* 196 Ill. 554.) The liens of the appellant were created by a trust deed executed by said

Joseph Strozewski and wife on August 2, 1894, to L. L. Gilman, trustee, to secure the payment of four promissory notes to different persons, aggregating $443.70, and by a judgment recovered in the circuit court of Cook county on October 28, 1895, for improvements on the homestead premises and an execution levied thereon. In the trust deed securing the notes held by the appellant the homestead estate was released and the trust deed was acknowledged in accordance with the statute, so that it became a lien upon the homestead estate. The controversy is over the question whether the act in force May 15, 1903, legalizing acknowledgments taken before stockholders or officers of corporations, had the effect to make the trust deed securing the building association a lien upon the homestead prior to the liens held by appellant.

The building association and the trust and savings bank, as trustee, filed their bill in the superior court of Cook county November 20, 1901, for the foreclosure of the trust deed securing the building association. Among the defendants were the holders of the four notes now owned by appellant and L. L. Gilman, the trustee, and Joseph Strozewski and his wife. Gilman, the trustee, and the holders of the notes, as well as Joseph Strozewski and his wife, in their answers set up the homestead estate, and alleged that the trust deed of the building association was null and void so far as that estate was concerned. Gilman and the holders of the notes claimed that their trust deed was a first lien on the homestead, and afterward filed their cross-bill to foreclose said trust deed, making the same averments. The owner of the judgment recovered for the improvement of the homestead premises answered the cross-bill, claiming a second lien on the estate of homestead, subject only to that of the trust deed to Gilman. Replications having been filed to all the answers, the issues under the original bill and cross-bill were referred to a master in chancery, who filed his report September 19, 1902, finding that there was a

homestead estate in the premises; that the trust deed securing the building association was null and void as to such estate; that the trust deed securing the cross-complainants was a first lien on the homestead; that by the levy of an execution the judgment became a second lien on the estate of homestead; that the building association had a first lien on the excess over and above the homestead; that the Gilman trust deed was a second lien on such excess and the judgment a third lien thereon. Other liens not involved in this appeal were also disposed of by the report. On December 15, 1902, the issues were again referred to the master on the question whether the trust deed securing the building association was a lien on the homestead as a debt incurred for the improvement thereof. The master filed his supplemental report on April 28, 1903, finding that said trust deed secured a debt in part for the improvement of the premises; that as to such part it was a first lien on the homestead estate, and that the Gilman trust deed and judgment were second and third liens. The case stood on exceptions to this report, when appellant, who had become the owner of the notes secured by the Gilman trust deed and of the judgment, by leave of court, together with Gilman, the trustee, filed a supplemental cross-bill on June 2, 1903, alleging the purchase of said securities as first and second liens in reliance upon the law as it existed at the time of the purchase, and claiming priority for his liens. The answer of the complainants in the original bill admitted the purchase of the securities by appellant on July 21, 1902, after examination of the records and in the belief that they were first and second liens on the homestead, but averred that the indebtedness to the building association was incurred for the improvement of the homestead, with the exception of $750. The answer of Joseph Strozewski and wife set up the act of 1903, legalizing acknowledgments. Replications having been filed to the answers, it was stipulated that the issues should

be submitted to the court on the evidence taken and reported by the master.

The material facts shown by the evidence are as follows: Joseph Strozewski, the owner of the premises occupied as a homestead, entered into a contract with John Skotnicki to erect a building thereon, and on May 22, 1894, Strozewski made application to the building association for a loan of $3300, offering said premises and thirty-three shares of capital stock of the association as security, and stating that the property was encumbered by a mortgage for $750, and that he had agreed to pay the contractor $3200 to complete the building. The application was accepted and the trust deed was executed and acknowledged before the secretary of the association, who was also a stockholder. The association advanced money to pay the existing encumbrance and commissions, attorney's fees, insurance and other expenses, together with $200 to a sub-contractor, amounting to $1315.70. The balance of the loan was retained until August 2, 1894, when the building was completed, and it was insufficient to pay the entire amount due on the building. By agreement the contractor and sub-contractors entitled to liens met at the office of the association on that day, and the balance of the loan was distributed among them upon their executing releases of their claims for liens. At the same time Joseph Strozewski and wife executed the four promissory notes to contractors and secured them by the trust deed to Gilman, which was acknowledged so as to convey the homestead. They also executed two other notes for work on the building on which the judgment was afterward entered. On July 21, 1902, appellant purchased the judgment and the notes secured by the trust deed to Gilman.

Upon the hearing the superior court entered a decree finding that the lien of the building association was a first lien on the premises, including the homestead estate; that the liens of appellant were subject thereto;

that there was due the building association $3856, including $300 for solicitor's fees; that on July 21, 1902, appellant, in consideration of $428.09, became the owner of the notes secured by the trust deed to Gilman; that the amount due thereon was $620; that on August 11, 1902, appellant, for the consideration of $202.62, purchased the judgment; that the act of 1903, legalizing acknowledgments, had the effect to make the trust deed securing the building association a valid and legal conveyance of the estate of homestead as against appellant, the same as though it had been originally acknowledged in accordance with the law, and that appellant purchased his notes and judgment before the passage of said act but with knowledge that the building association claimed a lien on the homestead estate. The master was ordered to sell the property and pay the amount due the building association and bring the surplus into court.

The trust deed securing the building association, when executed, was null and void as to the estate of homestead, (*Ogden Building and Loan Ass.* v. *Mensch, supra,*) and so remained until the curative act of 1903 took effect. The Gilman trust deed and the judgment are prior liens on the homestead estate unless that act had a retroactive effect to validate the lien of the building association from the time of the original transaction. The validity of that act is attacked by appellant on several grounds. It is first contended that it is not a law, but a mere legislative direction to the courts to decide and adjudge in a particular manner, and is therefore an invasion of the province of the judicial department. The act provides as follows: "That all deeds, mortgages or other instruments in writing, relating to or affecting any real estate situated in this State, wherein a corporation was or may be the grantor, mortgagor, grantee or mortgagee, which have been acknowledged or proven before any notary public, justice of the peace or other officer authorized by the statutes of this State to take acknowledgments of

208—16

such instruments in writing, when so acknowledged or proven, in conformity with the statutes of this State, shall be adjudged and treated by all courts of this State as legally executed and acknowledged or proven, notwithstanding such acknowledgments or proof of the execution thereof were taken before a notary public, justice of the peace, or such other officer who was, or may have been at the time of such acknowledgment, a stockholder or officer of such corporation; and all such acknowledgments or proof of such deeds, mortgages or other instruments in writing heretofore taken before any such notaries public or other officers, who were at the time of such execution, acknowledgment or proof, a stockholder or officer of such corporation, are hereby legalized." (Laws of 1903, p. 120.) There is language in the act which, standing alone, might be interpreted as a mandate of the legislature to decide cases arising prior to the enactment according to the legislative will. The legislature can not exercise judicial power, either directly or through a legislative command; but the substance of this act is, that acknowledgments taken before an officer or stockholder of a corporation shall be legal and valid, and that acknowledgments so taken before the passage of the act are legalized. That is not an exercise of judicial power, since it does not purport to settle suits or controversies, but only gives effect to acknowledgments in a matter under the legislative control. The legislature might doubtless have provided by a prior law that an acknowledgment could lawfully be taken before an officer or stockholder of a corporation, and the act goes no further than to bind the mortgagor where the acknowledgment is void by reason of personal disability of the officer to take it. The legislature may ratify and confirm any act which it might lawfully have authorized in the first instance, where the defect arises out of the neglect of some legal formality and the curative act interferes with no vested rights. *United States Mortgage Co.* v. *Gross,* 93 Ill. 483.

The next proposition is, that the act is in violation of the constitution, as impairing the obligation of a contract. It seems clear that it does not violate the obligation of the contract between the building association and Strozewski, but rather validates it and makes it enforceable. It goes no further than to bind the mortgagor by a contract which he attempted to enter into but which was void for defective execution. The intention of the parties failed merely through the disability of the officer. Neither does the act impair the contract between Strozewski and the parties secured by the Gilman trust deed. Their contract remains in force, to be executed according to its terms.

The third proposition we consider sound, and it is, that the act cannot have the effect to deprive appellant of his vested rights and transfer them to the building association, which would constitute a taking of property without due process of law. Under the law of the land the building association had no lien on the homestead prior to the passage of the curative act of 1903. After the execution of the trust deed securing the building association, Strozewski was still vested with a perfect, unencumbered title to the estate of homestead, and on August 2, 1894, that estate was conveyed to Gilman in trust, to secure the holders of the four notes. The judgment was recovered on two notes given for improving the homestead, and a levy was made on the homestead estate under an execution issued on that judgment. Under the law the judgment was a second lien on the homestead. A mortgage lien and a judgment which is a lien are each vested rights of property, and in this case both had become vested before the passage of this act. It is not within the power of the legislature to transfer such vested rights from one to another. (*Lane* v. *Soulard*, 15 Ill. 123; *Russell* v. *Rumsey*, 35 id. 362; *Conway* v. *Cable*, 37 id. 82; *Rose* v. *Sanderson*, 38 id. 247.) To make vested prior liens inferior and subsequent to a trust deed which was

not a lien when such rights vested, would be to transfer property from one to another by legislative enactment. Appellant was purchaser of the securities *pendente lite,* and took them subject to all equities existing against them in the hands of his assignors and subject to any decree which might have been entered against such assignors. Perhaps this would have been the case whether he purchased during the pendency of the suit or before. At any rate, it cannot be denied that he took the liens subject to any equities existing against the original holders. The building association, however, had no equities which could overcome the legal and equitable rights of appellant's assignors. Much of the argument on behalf of appellees relates to such supposed equities treated as synonymous with natural justice; but it must be remembered that while equity is based upon moral right and natural justice, it is not co-extensive with them. Equities are rights which are established and enforced in accordance with the principles of equity jurisprudence under some general principle or acknowledged rule governing courts of equity. (1 Pomeroy's Eq. Jur. 46, 47.) The building association did not, by virtue of its loan or its trust deed, acquire any equitable estate in the homestead. No court of equity would think of decreeing an equitable estate in a homestead under a mortgage which in the law did not create any lien. All deeds or instruments of writing for the alienation of a homestead are invalid unless the homestead is released in the manner prescribed by the statute, and if a mortgage contains no release or waiver of the homestead a court of equity can not make the mortgage effectual against such estate. (*Stodalka* v. *Novotny,* 144 Ill. 125.) The lien of the building association was subject to the homestead estate of Strozewski, but in the trust deed to Gilman the homestead was released and waived, and in such a case the second mortgage is entitled to priority over the first to the extent of $1000. (*Shaver* v, *Williams,* 87 Ill. 469; *El-*

*dridge* v. *Pierce*, 90 id. 474.)  The act can have no effect
as against subsequent *bona fide* purchasers, who cannot
be deprived of their property by legislative enactment.
The right of a person having a vested interest is secure
against any act of the legislature. (Cooley's Const. Lim.
378; *Fisher* v. *Green*, 142 Ill. 80.)  It would not be con-
tended that if Strozewski had conveyed the premises
to a third person the legislature could deprive him of
his title by validating the acknowledgment, so that the
homestead estate could be appropriated to the payment
of the debt to the building association.  In the case of
*United States Mortgage Co.* v. *Gross, supra*, it was held com-
petent for the legislature to validate a mortgage by a
curative act, on the ground that the purchaser had no
vested right to keep property released from a debt which
he was paid for assuming.  It would have been inequi-
table and unjust to permit a purchaser to hold valuable
property discharged of a debt which was a large portion
of the purchase price and which he had agreed to pay.
There are no such equities in this case.

It is urged, however, that the trust deed of the build-
ing association is a first lien because it is for a debt in-
curred for the improvement of the homestead.  The loan
was made by the building association to Strozewski, who
intended to apply the proceeds in payment for the new
building.  Part of the loan was advanced for other pur-
poses and the building association held the balance un-
til the building was practically completed, when, for its
own protection, it required releases of mechanics' liens,
and at a meeting of all the parties interested distributed
the money to the contractor and sub-contractors.  The
debt was not a debt for making any improvement.  As
between the contractor and Strozewski the debt was for
the improvement of the homestead, but as between Stro-
zewski and the building association he was a borrower
and it was a lender.  The improvement was considered
by the association in making the loan with reference to

the sufficiency of the security, and the money was held and paid to the contractors for the protection of the lender.   Money so borrowed and used in the improvement of real estate does not constitute a debt incurred for an improvement of the homestead, within the meaning of the law.   (*Parrott* v. *Kumpf*, 102 Ill. 423.)   In the cases of *Austin* v. *Underwood*, 37 Ill. 438, and *Magee* v. *Magee*, 51 id. 500, money was paid as purchase money directly to the vendor for the purpose of having land conveyed, and was not borrowed to pay for the land. Those cases were different from this, in which the debt was the debt of Strozewski to Skotnicki under the building contract, and money was borrowed to discharge the debt.

A question is raised as to the reasonableness of the allowance made to the master for reporting his conclusions, but counsel says that he submits it without argument.   The reports, and especially the first one, consist of lengthy arguments and quotations from decisions of courts, which are not proper to be contained in a report. Such a practice imposes unnecessary burdens upon litigants and perhaps affords an apparent basis for exorbitant charges.   The conclusions of fact and law should be clearly and concisely stated, and it is not a proper practice for the master to present a treatise on the law, with citations of cases and quotations from reports. That is the proper function of counsel, and the record should not be filled with such material.   In view of the fact that the objection does not appear to be insisted upon, we are inclined to permit the allowance in this case to stand as made.

The decree of the superior court is reversed and the cause is remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded.*