(No. 27068.—Affirmed in part, and reversed in part and remanded.)
THE PEOPLE *ex rel.* Harry A. Little, County Collector, Appellee, *vs.* PEORIA & EASTERN RAILWAY COMPANY *et al.,* Appellants.

*Opinion filed March 18, 1943—Rehearing denied May 18, 1943.*

HENRY I. GREEN, ORIS BARTH, H. LEONARD JONES, and JOSEPH W. CORAZZA, (SAMUEL W. BAXTER, THOMAS A. McCORMACK, CARLETON S. HADLEY, L. H. STRASSER, K. L. RICHMOND, V. W. FOSTER, CHARLES A. HELSELL, and JOHN W. FREELS, of counsel,) for appellants.

WILLIAM L. SPRINGER, State's Attorney, (JOHN J. BRESEE, and JOHN H. BARTH, of counsel,) for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Appellants, Peoria & Eastern Railway Company, Chicago and Eastern Illinois Railroad Company, Wabash Railway Company, Illinois Central Railroad Company, and Illinois Terminal Railroad Company, appeal from the orders of the county court of Champaign county overruling certain objections to 1940 taxes. The causes are consolidated here for opinion.

The facts are stipulated and the questions presented are purely legal. The objections go, (1) to the county tax for tuberculosis-sanitarium purposes, objected to by all the appellants; (2) an item in town taxes for "Home Relief (including veterans,)" objected to by appellants Peoria & Eastern Railway Company and Chicago & Eastern Illinois

Railroad Company, and an item in the town tax of the town of Mahomet for "Surplus Commodity," objected to by the Peoria & Eastern Railway Company, and (3) the taxes for non-high school district, as to which the Peoria & Eastern Railway Company, Chicago & Eastern Illinois Railroad Company and Illinois Terminal Railroad Company contest the validity of the entire non-high school tax, while the other appellants object only to the excess rate of 50 cents on the $100 valuation above the statutory rate of 75 cents. This tax was levied at the rate of $1.25.

The objection to the tuberculosis sanitarium tax is that it was levied at the rate of .075 over the maximum 25-cent rate for county purposes, and while purporting to be levied under authorization of an election, was invalid because such election was invalid as the ballot used did not comply with statutory requirements. Therefore, they say, the excess tax was void. As to this tax the trial court held that the election was illegal but that the defect was cured by a curative act enacted by the General Assembly in 1939. The election, under which appellee insists authority was given to levy the tuberculosis-sanitarium tax, was held pursuant to section 27 of the Counties Act, (Ill. Rev. Stat. 1939, chap. 34, par. 27.) It is conceded by appellee that the form of ballot used called for a "Yes" or "No" vote upon the proposition stated in the ballot, and not "For additional tax in excess of the statutory limit," or "Against additional tax in excess of the statutory limit," and for that reason the election was void; but appellee contends, and the trial court held, that a validating act known as House Bill 503, (Laws of 1939, p. 489; Ill. Rev. Stat. 1939, chap. 34, par. 175j,) cured the defect in the election and that the tax was lawful as assessed. The sole question presented, therefore, as to this tax, is whether the curative act validated the election and authorized assessment of the tax in excess of the 25-cent limit effective as to county taxes.

Appellants argue that the decision of this court in *People ex rel. Burkholder* v. *Peoria and Eastern Railway Co.* 375 Ill. 197, is decisive of the question here presented. That case involved a 1938 levy and the question was whether a curative act adopted in 1939 cured the defects in the election and so, in the levy. The holding was that the election was void and the curative act of 1939 could not validate the levy made prior to the effective date of that act. In the case before us the levy was made after the effective date of the curative act herein invoked and the question is whether that fact renders the curative act effective as validating this election and levy. Thus *People* v. *Peoria and Eastern Ry. Co.* 375 Ill. 197, is not controlling in this case unless no distinction is to be seen between cases where the levy is made after the date of the curative act and those where such levy was made before the curative act became effective, as was the fact in the *Peoria and Eastern Railway Co. case.* This court in that case specifically limited its decision to cases where the curative act had been passed subsequent to the date of the levy of the tax.

Power of the General Assembly to validate, by curative law, proceedings which it might have authorized in advance is recognized and settled, but that power is limited to cases of the irregular exercise of a power, and such act cannot supply a lack of power existing in the first instance. A tax levy made by a taxing body acting without statutory authority to make such levy, cannot be validated by a curative act. (*People* v. *Peoria and Eastern Ry. Co.* 375 Ill. 197; *People ex rel. Gill* v. *Baum,* 367 Ill. 249; *People ex rel. Stevenson* v. *Illinois Central Railroad Co.* 310 Ill. 212.) It is a function of the General Assembly to establish a rule of procedure for the future, yet it may remedy some defects in proceedings already had where there is an omission of an act which the General Assembly might, in the

first place, have dispensed with in fixing requirements, or where it might have authorized originally the act as done. (*Roberts* v. *Eyman,* 304 Ill. 413; *Steger* v. *Traveling Men's Building and Loan Ass'n,* 208 Ill. 236; *Town of Fox* v. *Town of Kendall,* 97 Ill. 72.) The General Assembly can not, however, by a curative act, make valid a void proceeding, or cure complete want of authority to act. *People ex rel. Vaughan* v. *Thompson,* 377 Ill. 244; *People ex rel. Birch* v. *Pennsylvania Railroad Co.* 375 Ill. 85; *People ex rel. Ward* v. *Chicago and Eastern Illinois Railway Co.* 365 Ill. 202.

The admission on the part of appellee that the election, when it took place, was void, as there was no statute authorizing it, has direct bearing upon the issue to be determined here. The sole authority or jurisdiction of the taxing body to levy this excess tax was a valid election authorizing such excess levy. As the election was void there was no authority whatever to levy the tax. To hold, in such a situation, that the validating act was effective to authorize the increased levy, would be to approve a tax wholly unauthorized and thus impose a tax upon the taxpayers of the county by an act of the General Assembly, in violation of sections 9 and 10 of article IX of the constitution. (*People* v. *Pennsylvania R. R. Co.* 375 Ill. 85; *People* v. *Illinois Central R. R. Co.* 310 Ill. 212; *Herschbach* v. *Kaskaskia Island Sanitary and Levee Dist.* 265 Ill. 388; *Wetherell* v. *Devine,* 116 Ill. 631.) It is clear under the holdings of this court, that the curative act of 1939 did not validate the void election. As this is so, no authority for such tax existed at the time of the levy of the excess sanitarium tax in this case. This is true even though the tax was not levied until after the passing of the validating act. It follows that the trial court erred in overruling appellants' objection to the excess county tax for tuberculosis-sanitarium purposes.

The next question concerns the town taxes for the towns of Champaign and Mahomet. These towns levied a tax "For Home Relief (including veterans,)" and the town of Mahomet also levied a tax styled "Surplus Commodity." Appellants Peoria & Eastern Railway Company and Chicago & Eastern Illinois Railroad Company, objected to the Home Relief (including veterans) tax, while the Peoria & Eastern Railway Company objected also to the levy of the town of Mahomet for "Surplus Commodity" tax. The objection to the Home Relief (including veterans) tax is that it includes both home relief and veterans relief; that they represent different purposes which are to be provided for by different taxing authorities, and as the purposes cannot, in the levy, be separated, since the tax was not itemized, the entire tax is invalid. The argument is that veterans relief is a valid county purpose but not a valid town purpose, while home relief, if construed to be relief of the poor, is a valid town purpose. The trial court in overruling these objections, held that the words "including veterans" were surplusage.

Under what is commonly known as the Bogardus Act, (Ill. Rev. Stat. 1939, chap. 23, pars. 154a to 154i, p. 312,) it is the duty of the county to furnish relief to needy veterans and their families, while by amendment in 1936 of the Pauper Act, (Ill. Rev. Stat. 1941, chap. 107, par. 15.1, p. 2392,) the care of paupers was transferred from counties to townships.

In *People ex rel. McDonough* v. *Mills Novelty Co.* 357 Ill. 285, objection was made to a levy "for the relief of indigent poor and for the relief of indigent and suffering soldiers, sailors, marines, and their families as provided under the Bogardus Law" by Cook county. This court held that as the appropriation under which the levy was made did not specify the amount or proportion of the fund appropriated which should be devoted to those coming within the benefits of the Bogardus Act and those falling

within the general statutory provisions as to relief for the poor, the objection to the entire tax should have been sustained.

While it is conceded here that the levy before us itemized as "Home Relief" may be said to be a levy of taxes for the care of poor and indigent of the township, and while indigent soldiers, sailors and marines might be said to come under the designation "the poor," yet the statutes having specifically designated the taxing body charged with the duty to care for the poor on the one hand, and another taxing body to care for indigent soldiers, sailors and marines, a levy by a town for both purposes is not authorized by statute. As such purposes are not, in the levy before us, separated, it is impossible to tell what part is for the poor of the town, and so the entire tax must fall.

Appellant Peoria & Eastern Railway Company objects to a levy of the town of Mahomet to the item of "Surplus Commodity," an item which appears to have been levied in connection with "Home Relief (including veterans.)" The complaint against this tax is that there was no statutory provision authorizing a tax for "Surplus Commodity" as a part of relief for the poor. They call attention to the fact that the record before us does not reveal any explanation of the meaning of the term or purpose for which the proceeds of such levy are to be used. Appellee says that as public officials are presumed to have properly discharged their duties, the levy is to be deemed valid until the contrary is shown by clear testimony. They say also that the requirement of itemization of a town tax levy is not as strict as in the case of a county or other municipal corporation levy. However, appellee in this case fails to show any authority for the levy for "Surplus Commodity," and while the amount of tax claimed in this case is trifling, the trial court should have sustained the objection of the appellant.

We come, then, to the validity of the non-high school tax assessed against these appellants, a part of whom object

to the entire tax and part to the extent of the excess levy of 50 cents on each $100 valuation. The objection to the entire tax is that, the certificate of levy being dated August 26, 1940, and filed with the county clerk September 13, 1940, the levy was not made on or before the second Tuesday in August, as required by the statute, and the certificate of levy was not filed with the county clerk within the time required by the statute, citing Ill. Rev. Stat. 1939, chap. 120, par. 638. Appellee concedes that such statutory provision exists and applies to levies under the Revenue Act, but contends that a tax levy for non-high school districts is not governed by this provision of that statute but by paragraph 102, chap. 122, Ill. Rev. Stat. 1939, requiring that the certificate of levy for non-high school taxes be made and returned to the county clerk on or before the first Tuesday in October. Both acts, as amended, were in effect at the time this levy was made, and are to be construed together, and both sustained, if possible. Paragraph 638 of chapter 120 of the Revenue Act, was originally enacted July 1, 1872, (Laws of 1872, p. 31,) and required that the levy be made on or before the second Tuesday in August. The act was amended in 1873, (Laws of 1873, p. 45,) without material change as to this requirement, and, as amended, remained in force until 1917 when the School Act was amended to provide for the formation of non-high school districts. Amendments have from time to time been made to these acts but none changing the provisions thereof so far as affects the question before us.

The amendment to section 94 of the School Act in 1917, permitting the formation of non-high school districts, empowered the board of education of such districts to levy a tax for the purpose of paying tuition. It provided: "Such tax levy shall be certified and returned to the county clerk on or before the first Tuesday in October. * * * A failure to certify and return the certificate of tax levy to the county clerk in the time required shall not

vitiate the assessment." Amendments to the Revenue Act in 1917, carried the same provision as it theretofore had relating to the time of certifying the tax levy. Under the provisions of paragraph 2, chap. 131, Ill. Rev. Stat. 1939, relating to statutes: "The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not as a new enactment."

In *People ex rel. Kjellquist* v. *Chicago, Milwaukee and St. Paul Railway Co.* 321 Ill. 499, it was held that a non-high school district tax must be levied on or before the first Tuesday in October, and that such provision of the statute is mandatory. It was also held that the declaration therein, that failure to certify and return the certificate of tax levy to the county clerk at the time required by statute shall not vitiate the tax, has no application where the levy is not made within the time required.

While, at the time of the amendment to the School Act permitting the formation of non-high school districts, the provision of the Revenue act fixing the second Tuesday of August as the time on or before which certificates of levy were to be filed had been in force many years, the Non-High School Act was a new, complete and independent act and made provision for and fixed the limit of the time within which non-high school taxes must be levied. The time fixed was a different time from the one provided for in the Revenue Act. There is in the nature of the necessities of a non-high school district a difference from those contemplated by the Revenue act. The levy is made to pay the tuition of non-high school students. It is a matter of common knowledge that high schools open for the school year early in September, and it cannot be known until the school year is well organized and operating how many students from non-high school districts will enter high schools, nor until they are enrolled can it be known how many will attend any certain high school. Also it is well known that

tuition for attendance at high schools is not the same in all districts.

A rule of construction, long established, requires that acts enacted at the same session of the General Assembly must be considered *in pari materia,* so that both acts must, if possible, be given effect. (*People* v. *Thompson,* 377 Ill. 244; *People ex rel. Martin* v. *Village of Oak Park,* 372 Ill. 488; *People ex rel. Carnine* v. *Illinois Central Railroad Co.* 337 Ill. 276; *People ex rel. City of Chicago* v. *Barrett,* 309 Ill. 53.) Acts which appear to be inconsistent are not to be so construed if it is possible to construe them otherwise. (*People ex rel. English* v. *Atchison, Topeka and Sante Fe Railway Co.* 370 Ill. 420; *People ex rel. Heaton* v. *Illinois Central Railroad Co.* 295 Ill. 408.) Taking into consideration the fact that both of these acts remained on the statute books to the date of this levy, without amendment as to the time when tax levies must be certified to the county clerk, when considered with the evident reason for difference in the legislation, it seems clear that it was the legislative intent that so far as non-high school taxes are concerned, the time for returning the certificate should be as provided in that act. If this be not the legislative intent, then the effect of the language used in the amendment of the Revenue Act in which those requirements were not changed, would be to amend the Non-High School Act without inserting in the amendatory act the act amended, contrary to section 13 of article IV of the constitution. We are of the opinion that the county court did not err in overruling these objections.

The remaining question concerns the validity of the excess of 50 cents on the $100 valuation over the statutory limit of 75 cents for non-high school purposes. That question involves the time when the levy was made, which these appellants say was on August 12, 1940, while the election authorizing such excess did not take place until August 24 following. It is stipulated that the records of the non-

high school board show that on August 12, 1940, at a meeting of the board, a resolution was adopted for a tax levy in the amount later extended against the property of the district, and the president and secretary of the board were authorized to sign a certificate of such levy and file the same with the county clerk. At that time the limit of the non-high school tax was 75 cents on each $100 valuation, no election having been held by the district to increase the rate. It is also stipulated that the minutes of a meeting of the school board, held on August 26, 1940, show that the minutes of the previous meeting were read and approved with the exception of the resolution concerning the levy. It appears that those minutes did not show the adoption of an appropriation and budget ordinance prior to action pertaining to the levy. A new resolution was offered embodying the appropriation and budget ordinance and levying the tax in the amount thereafter extended. The certificate of levy was signed on August 26 and was filed with the county clerk on September 13. It appears also that no certificate of levy dated August 12 was signed.

The question raised by these appellants is as to when the levy of the non-high school tax was made. If on August 12, the excess of 50 cents in the rate was extended without authority because on that date no election had been held. If the levy was made on August 26, the excess rate is valid as a favorable vote of the people had then been had.

Appellants argue that the levy was made on August 12, and by so doing the board exhausted its authority and could not later make a levy for that year. Appellee on the other hand contends that as no appropriation and budget ordinance had been adopted on or before August 12, there was no valid levy on that date, and as the motion was made on August 26 to make the levy "after the adoption of the budget and appropriation ordinance, etc." and a levy made, it was the first and only valid levy, and since this

was done on August 26, which was after a favorable vote of the people authorizing the extension of the rate, the excess levy was valid.

It is a general rule, as cited by appellant, that the maximum rate authorized at the time taxes are levied, and not one authorized at a subsequent date, is the rate that controls. (*People ex rel. Carr* v. *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* 316 Ill. 410.) Under this rule the validity of the tax here extended must be determined as of the time it was made. (*People ex rel. Harding* v. *Chicago and Northwestern Railway Co.* 340 Ill. 102.) So far as shown by the record as cited, and by the stipulation, it is by no means clear that the tax was levied or could have been levied on August 12. The only certificate filed was dated August 26. The records of the board, so far as they appear in this case, indicate that the only valid levy ordinance that could be passed was the one on that date. As this followed an election authorizing the excess rate, and, as we have seen, the levy was made before the first Tuesday in October, we conclude that the trial court did not err in overruling appellant's objection to the excess rate of 50 cents levied for non-high school district tax.

The judgment of the county court overruling the objections to the "Tuberculosis Sanitarium tax," the town tax for "Home Relief (including veterans,)" and the "Surplus Commodity" tax, is reversed. The judgment of that court overruling the objections to the non-high school tax, including the 50-cent excess rate of such tax, is affirmed. The judgments of the county court are affirmed in part and reversed in part, and the cause remanded to that court with directions to enter judgments in accordance with this opinion.

*Affirmed in part, and reversed in part and remanded, with directions.*