NO. 5-95-0655

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              FIFTH DISTRICT

_________________________________________________________________

THE PEOPLE ex rel. EARL L. VUAGNIAUX  )  Appeal from the

and ALICE G. VUAGNIAUX,               )  Circuit Court of 

                                      )  Madison County.

     Plaintiffs-Appellants,           )

                                      )

v.                                    )  No. 94-MR-325

                                      )

CITY OF EDWARDSVILLE, A Municipal     )

Corporation of the State of Illinois, )  Honorable

                                      )  David Herndon,

     Defendant-Appellee.              )  Judge, presiding.

_________________________________________________________________

     JUSTICE MAAG delivered the opinion of the court:

     The plaintiffs, the People of the State of Illinois ex rel.

Earl L. Vuagniaux and Alice G. Vuagniaux, appeal the trial court's

grant of summary judgment in favor of defendant, the City of

Edwardsville (City). 

     The relevant facts are as follows.  In 1968, the City

purchased a parking lot located at Second and St. Louis Streets.

This parking lot was used for public parking.  In December of 1987,

the City's planning department prepared a tax-increment-financing

(TIF) redevelopment plan.  This plan was revised on January 20,

1988.  The City then adopted ordinance No. 4162-3-88 approving the

central-area tax-increment redevelopment plan and redevelopment

project on March 15, 1988.  It is undisputed that the subject

parking lot is located within the physical boundaries of the TIF

district and is within the redevelopment project area.  In May of

1988, ordinance No. 4177-5-88 was passed, authorizing the City's

issuance of central-area redevelopment-project-area general

obligation bonds in the principal amount of $1,400,000 for the

purpose of funding the tax-increment redevelopment plan and project

approved by City ordinance No. 4162-3-88 and providing for a tax

levy for the payment of said bonds.  In July 1988, the redevelop-

ment plan was amended.  On July 28, 1988, Garrett A. Balke, Inc.

(Korte-Balke), sent a letter to Nina Baird, the City's clerk,

stating its development concept.  Within its development concept,

Korte-Balke stated that it intended to relocate Earl Vuagniaux "to

a new building of approximately 10,000 square feet in the City

Parking Lot at Second and St. Louis Streets."  The letter also

requested the City to "[v]acate Second Street between St. Louis and

Vandalia [and] [c]onvey to [Korte-Balke] fee simple title to Lot 55

(the City parking lot) for $1.00 and other considerations."  The

City then passed ordinance No. 4197-8-88 on August 16, 1988,

authorizing the transfer of certain real property pursuant to the

Tax Increment Allocation Redevelopment Act (Ill. Rev. Stat. 1987,

ch. 24, par. 11-74.4-1 et seq. (now see 65 ILCS 5/11-74.4-1 et seq.

(West 1994))).  This ordinance stated as follows:  

          "Section II:  Prior to the execution and delivery of

     title instruments, the City, District and the developers

     shall execute an agreement setting forth the terms upon

     which the City and the Tax Increment Financing District

     shall transfer the real estate to the developers and the

     developer's agreement for development and purchase of the

     parcels.  Said terms shall include, but not be limited

     to:  

          A.  Purchase price:  One Dollar ($1.00) per parcel.

          ***  

          C.  Developers shall, upon the Second and St. Louis

     Street parking lot site, construct at least 10,000 square

     feet of office, retail or compatible general commercial

     space within two years of said parcel being transferred

     to developer."  

The City then solicited and received proposals for the parking lot

in 1989.  One of those proposals was submitted by the Vuagniauxes. 

     In August of 1989, a report on the TIF district was prepared

by the City's TIF committee.  This report discussed the fact that

there had been considerable debate over parking in the downtown

area and the fact that the new county administration building was

going to worsen the problem.  The report stated, inter alia, as

follows:  

     "L.  Conversion of Free Parking

          In order to enhance district revenue, the City

     should consider temporarily transferring title to the

     Second and St. Louis Street parking lot to the district. 

     The lot could then be upgraded and converted into a

     leased parking lot.  I believe that the market downtown

     would support $25-50 per month fees for each spot."

     On October 12, 1989, Terry Smith, Edwardsville's City Planner,

prepared a letter to the City's finance committee regarding the

"TIF Update" and stated as follows:  

     "The district should consider the disposal of the parking

     lot at St. Louis and Second Street.  At the present time

     no official action has been taken ***.  I would like to

     recommend that serious consideration be given to the

     development of this city owned lot.  I am making this

     recommendation in light of the recent notification of the

     cancellation of the Michael's Chevrolet redevelopment

     project.  I believe that the development of this lot

     would greatly enhance the overall financial stability of

     the TIF district.  I believe that the potential financial

     gains through the development of this lot far exceeds

     [sic] the effects of the loss of 24 public parking

     spaces.  The Council should consider the possibility of

     making a counteroffer to the offer made by the Vaugniaux

     [sic]/Winfield Partnership.  It would  be interesting to

     have their reaction to the city's offer of the City

     Parking lot *** [at] Second Street for free if they would

     construct [a] 15,400 square foot building.  If this type

     of an arrangement could be made[,] *** the district would

     profit by obtaining a greatly increased tax increment as

     well as the elimination of the existing Vaugniaux [sic]

     building.  [The] Vaugniaux[sic]/Winfield Partnership

     would benefit by obtaining the property at no cost."   

     Hence, a review of the record shows that the parking lot was

a part of the "redevelopment project area" and the "redevelopment

plan."  See 65 ILCS 5/11-74.4-3(n),(p) (West 1992).  The record

also shows, however, that the parking lot never became a "rede-

velopment project."  See 65 ILCS 5/11-74.4-3(o) (West 1992).  On

July 19, 1994, the City passed ordinance No. 4735-7-94.  This

ordinance authorized a lease of the aforementioned parking lot to

Florists' Mutual, one of Edwardsville's largest employers.  The

ordinance states that the lease of the parking lot to Florists'

Mutual would economically benefit the City's TIF district. 

According to the ordinance, all of the income generated by the

lease of the parking lot was to be deposited into the City's motor

fuel tax fund.  

     On July 21, 1994, the plaintiffs filed a petition for leave to

file a complaint in quo warranto, alleging that the City failed to

comply with certain statutes of the State of Illinois when it

leased the aforementioned City parking lot, located 52 feet from

the Vuagniauxes' property, to tenants of Mark Twain Plaza, a TIF

development.  The City filed an answer and motion to dismiss,

raising the Vuagniauxes' lack of standing to file a quo warranto

action.  On July 29, 1994, the court determined that plaintiffs had

standing, and the court granted plaintiffs leave to file a

complaint in quo warranto and denied the City's motion, made under

section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615

(West 1992)), to dismiss plaintiffs' complaint due to lack of

standing.  On September 7, 1994, the plaintiffs filed a motion for

leave to file a first amended complaint to add an additional count

for injunctive relief.  The next day, the court granted this

motion.  The City filed its answer on December 12, 1994, and its

motion for summary judgment on December 15, 1994.  In support of

its motion, the City filed the affidavits of John Brancaglione, an

urban planner employed by a private firm of architects and

planners, and Gary Niebur, the City's mayor.  On March 23, 1995,

the plaintiffs filed a motion for summary judgment.  That same day,

the plaintiffs also filed a motion to strike the City's two

supporting affidavits and deny the City's motion for summary

judgment.  The court entered an order on May 30, 1995, granting the

City's motion for summary judgment, denying plaintiffs' motion to

strike the affidavits filed by the City, and denying plaintiffs'

motion for summary judgment.  In its order, the court stated,

"Nothing in the TIF statutes prohibits the City['s] *** leasing of

the subject parking lot *** [and] [n]othing in Section [11-]76-1

[of the Illinois Municipal Code (65 ILCS 5/11-76-1 (West 1992))]

prohibits the City['s] *** leasing of the subject parking lot."  

The plaintiffs filed a motion to reconsider, which was denied on

July 31, 1995.  Plaintiffs then filed a notice of appeal on August

30, 1995.

     The plaintiffs claim that the City's two affidavits, filed in

support of its motion for summary judgment, violated Supreme Court

Rule 191 (145 Ill. 2d R. 191), and that they should have been

stricken.  Pursuant to Supreme Court Rule 191(a) (145 Ill. 2d R.

191(a)): 

     "Affidavits in support of *** a motion for summary

     judgment *** shall be made on the personal knowledge of

     the affiants; shall set forth with particularity the

     facts upon which the claim, counterclaim, or defense is

     based; shall have attached thereto sworn or certified

     copies of all papers upon which the affiant relies; shall

     not consist of conclusions but of facts admissible in

     evidence; and shall affirmatively show that the affiant,

     if sworn as a witness, can testify competently thereto." 

     When reviewing a summary judgment order, the reviewing court

should construe the pleadings, depositions, admissions, and 

affidavits in support of the motion strictly against the moving

party and liberally in favor of the opponent.  Rinchich v. Village

of Bridgeview, 235 Ill. App. 3d 614, 627, 601 N.E.2d 1202, 1210-11

(1992).  Because summary judgment is a drastic means of disposing

of litigation, it should be allowed only when the right of the

moving party is clear and free from doubt.  Rinchich, 235 Ill. App.

3d at 627, 601 N.E.2d at 1211. 

     In a summary judgment proceeding, the purpose of affidavits is

to show whether the issues raised are genuine and whether each

party has competent evidence to support his position.  Wiszowaty v.

Baumgard, 257 Ill. App. 3d 812, 819, 629 N.E.2d 624, 630 (1994). 

An affidavit should meet the same requirements as competent

testimony since it actually substitutes for trial testimony. 

Wiszowaty, 257 Ill. App. 3d at 819, 629 N.E.2d at 630.  Hence, any

evidence that would not be admissible at trial cannot be considered

in a summary judgment proceeding.  Wiszowaty, 257 Ill. App. 3d at

819, 629 N.E.2d at 630.  

     We have reviewed both affidavits, and although we find several

statements in Mr. Brancaglione's affidavit and one statement in Mr.

Niebur's affidavit to be improper for making legal conclusions, we

decline to strike the affidavits in their entirety.  Where improper

material appears in an affidavit, only the tainted portion should

be excised, as opposed to the entire affidavit.  Wiszowaty, 257

Ill. App. 3d at 820, 629 N.E.2d at 631.  Therefore, we can only

consider those facts which were properly included in the affida-

vits.  See Wiszowaty, 257 Ill. App. 3d at 820, 629 N.E.2d at 631.

     The plaintiffs claim that the City violated sections 11-74.4-

3(n), 11-74.4-4(c), 11-74.4-5(c), and 11-74.4-6(a) of the Tax

Increment Allocation Redevelopment Act (the Act) (65 ILCS 5/11-

74.4-3(n), 11-74.4-4(c), 11-74.4-5(c), 11-74.4-6(a) (West 1992))

when it leased the aforementioned parking lot to Florists' Mutual. 

More specifically, the plaintiffs argue that section 11-74.4-4(c)

of the Act mandates that the City notify the public and property

owners within the TIF district of any redevelopment plan or project

and give them the opportunity to bid on the use and/or development

of property located within the district.  The City argues that even

if the property was proposed as part of the plan, if no additional

action was taken by the City to adopt a proposal for its develop-

ment as a redevelopment project, it was not necessary for it to

conduct the type of hearing required by the TIF statutes before

leasing it.  We agree.

     We have thoroughly examined the TIF statutes and find that the

leasing of the subject parking lot did not violate any of the

aforementioned TIF statutes.    

     The City claims that it was granted the power to enter into

the lease with Florists' Mutual pursuant to section 11-76-1 of the

Illinois Municipal Code.  65 ILCS 5/11-76-1 (West 1992).  Section

11-76-1 states that "[a]ny city or village *** which acquires or

holds any real estate for any purpose whatsoever *** has the power

to lease the real estate for any term not exceeding 99 years ***." 

65 ILCS 5/11-76-1 (West 1992).  Section 11-76-2 (65 ILCS 5/11-76-2

(West 1992)) states, however: 

          "Before the corporate authorities of the city ***

     make a lease of real estate for a term in excess of 20

     years, they shall give notice of intent to adopt such an

     ordinance.  The notice must be published at lease once in

     a daily or weekly newspaper published in the city ***,

     and if there is none, then in some paper published in the

     county in which the city *** is located.  The publication

     must be not less than 15 nor more than 30 days before the

     date on which it is proposed to adopt such an ordinance. 

     ***  

          *** Nothing in this Section prevents the corporate

     authorities from determining to sell or lease such

     property to the highest responsible bidder.  The corpo-

     rate authorities may provide by ordinance for the

     procedure to be followed in securing bids for the sale or

     lease of the *** property."  65 ILCS 5/11-76-2 (West

     1992).   

The City argues that "[sections 11-76-1 and 11-76-2] are contra-

dictory in that one requires a bidding procedure and one makes no

mention of it."  The City claims that because the provisions are

contradictory, it should not be required to comply with both.  The

City argues that only section 11-76-1 applies to this case.  We

disagree.

     Statutes in pari materia should be construed together.  People

ex rel. Bell v. New York Central R.R. Co., 10 Ill. 2d 612, 621, 141

N.E.2d 38, 43 (1957).  This is especially true where the statutes

were passed the same day and are to take effect the same day. 

People ex rel. Funk v. Hagist, 401 Ill. 536, 541, 82 N.E.2d 621,

623 (1948).  Statutes adopted at the same session of the General

Assembly ordinarily should be so construed, if possible, as to

harmonize (Funk, 401 Ill. at 541, 82 N.E.2d at 623) and to give

force and effect to the provisions of each.  People ex rel. Little

v. Peoria & Eastern Ry. Co., 383 Ill. 79, 88, 48 N.E.2d 518, 523

(1943).  Two statutes that are passed at the same session of the

General Assembly should not be construed as being inconsistent if

it is possible to construe them otherwise.  Little, 383 Ill. at 88,

48 N.E.2d at 523. 

     Sections 11-76-1 and 11-76-2 were both passed at the same

session of the General Assembly on the same day and deal with the

same  matter.  These statutes can be harmonized simply by reading

them together, that is, the City may enter into a lease for a term

not exceeding 99 years; however, if the duration of the lease is in

excess of 20 years, the corporate authorities shall give notice of

its intent to adopt such an ordinance.  As section 11-76-2 states,

the notice must be "published at least once in a *** newspaper." 

(Emphasis added.)  65 ILCS 5/11-76-2 (West 1992).  We see nothing

inconsistent between these statutes when we give force and effect

to the provisions of each of them regarding the duration of a lease

and the requirements of publishing notice in a newspaper depending

upon the duration of the lease.  

     On July 19, 1994, the City passed ordinance No. 4735-7-94.

This ordinance stated that the City would enter into a lease for a

period of less than 99 years with Florists' Mutual on the terms and

conditions as provided in the lease attached thereto as exhibit A. 

The parking space lease agreement, dated that same day, states:   

          "2.  The lease term hereof shall be for a period of

     five (5) years *** ending on the last day of August, 1999

     ***.  *** LESSEE shall have the option, in its sole

     discretion, to extend the term of this Lease for any

     period that it leases office space in Mark Twain Plaza

     ***.  *** In the event LESSEE purchases office space in

     Mark Twain Plaza ***, LESSEE may extend the term of this

     Lease by so notifying LESSOR in writing and this Lease

     shall thereafter continue until terminated on thirty (30)

     days['] advance written notice by LESSEE to LESSOR, and

     in such case LESSOR may not terminate this Lease except

     upon a material breach of the terms hereof by LESSEE. 

     ***  

          3.  The lease payment (rent) during the term hereof,

     including any extension or renewal, shall be five dollars

     ($5.00) per space totaling One Hundred Ten Dollars

     ($110.00) per month for 22 spaces.

                                   * * *

          12.  This Lease shall be binding upon and shall

     inure to the benefit of the parties hereto and their

     respective successors and assigns."

     Pursuant to section 2-1005 of the Code of Civil Procedure (735

ILCS 5/2-1005 (West 1992)), the sole function of the court

reviewing the trial court's entry of summary judgment is to

determine whether the lower court correctly ruled that no genuine

issue of fact had been raised and, if none was raised, whether

judgment was correctly entered as a matter of law.  Maxton v.

Garegnani, 255 Ill. App. 3d 291, 294, 627 N.E.2d 723, 726 (1994). 

We believe that the trial court erred in granting summary judgment

in favor of the City in the instant case because the question of

the duration of the lease is a mixed question of law and fact that

was never resolved by the trial court.  It could be argued that the

lease was a five-year lease or that it was a lease not exceeding 99

years, since only the lessee can request renewal for up to 99

years.  Even the City's brief states, "in examining the terms of

the lease no specific period of time is provided."  If the court

determines after consideration of the evidence and the terms of the

lease that the lease is a 99-year lease, then the City has violated

section 11-76-2 by not giving notice of its intent to adopt such an

ordinance and not complying with the remaining requirements of that

section.  If the court determines that the lease is a five-year

lease, then the City appears to have complied with both sections

11-76-1 and 11-76-2.  

     Since a mixed question of law and fact remains, namely, the

duration of the lease between the City and Florists' Mutual, we

must reverse the trial court's order granting summary judgment in

favor of the City and remand for further proceedings consistent

with this opinion.  

     Finally, we note that the City questions the Vuagniauxes'

standing to file a quo warranto action.  The City apparently made

this argument in the event that we reverse the trial court's grant

of summary judgment in its favor.  As we previously stated, on July

29, 1994, the court determined that plaintiffs had standing,

granted plaintiffs' leave to file a complaint in quo warranto, and

denied the defendant's section 2-615 motion to dismiss (735 ILCS

5/2-615 (West 1992)).  The record contains no notice of cross-

appeal as required by Supreme Court Rule 303 (155 Ill. 2d R. 303). 

Ordinarily, when an appellee does not file a cross-appeal, the

reviewing court will be confined to the issues presented by the

appellant and will not consider issues presented by the appellee,

except to the extent that they are related to the appellant's

issues.  Simmons v. Union Electric Co., 121 Ill. App. 3d 743, 760-

61, 460 N.E.2d 28, 40 (1984), aff'd, 140 Ill. 2d 444, 473 N.E.2d

946 (1984).  This rule, however, does not prevent us from consider-

ing the City's assignment of error against the plaintiff.  We

should be mindful that the City was an entirely successful litigant

in the court below, and its claim that the Vuagniauxes do not have

standing does not seek the reversal or modification of the judgment

as entered in the trial court.  This claim is akin to an alternate

argument, directed against a possible modification of the judgment

by this court, which is precisely what we have done.  "We do not

see that any purpose would be served in requiring an appellee to

file a cross-appeal in order to preserve conditional arguments

against action which may be ordered by this court."  Simmons, 121

Ill. App. 3d at 761, 460 N.E.2d at 40.  Thus, the City's standing

argument is properly before us. 

     The proper standard in determining whether a party has

standing is whether the trial court abused its discretion.  Amtech

Systems Corp. v. Illinois State Toll Highway Authority, 264 Ill.

App. 3d 1095, 1101, 637 N.E.2d 619, 623 (1994).  "Although standing

is a component of justiciability [citation], it is not jurisdic-

tional.  Rather, the lack of standing is an affirmative defense." 

Contract Development Corp. v. Beck, 255 Ill. App. 3d 660, 664, 627

N.E.2d 760, 764 (1994); see Greer v. Illinois Housing Development

Authority, 122 Ill. 2d 462, 494, 524 N.E.2d 561, 582 (1988).  It is

the defendant's burden to show that the plaintiffs do not have

standing to sue.  The issue is not properly presented in a section

2-615 motion to dismiss because this motion tests whether the com-

plaint is sufficient to state a claim for which relief might be

granted.  See Noyola v. Board of Education, 227 Ill. App. 3d 429,

433, 592 N.E.2d 165, 168 (1992).  

     We need not decide if the defendant waived this issue by

failing to properly raise it as an affirmative defense because the

outcome of our decision remains the same--the plaintiffs had

standing to file a quo warranto action for the following reasons. 

     In order to maintain an action in quo warranto, the Vuag-

niauxes had to demonstrate that they had a distinct personal

interest that was not common to the general public.  See People v.

Wood, 411 Ill. 514, 522, 104 N.E. 2d 800, 804 (1952).  Further, we

recognize that mere allegations of a status as a nearby resident of

the subject property and as a taxpayer are insufficient to invoke

the trial court's discretion.  See People ex rel. Van Cleave v.

Village of Seneca, 165 Ill. App. 3d 410, 412, 519 N.E.2d 63, 65

(1988).  The quo warranto complaint alleged the following distinct

personal interests of the Vuagniauxes:  

          "2.  *** [T]he Relators were and still are ***

     owners of fee simple title to commercial real estate in

     the City, described as *** Lot Numbered *** 220 *** in

     the *** City ***.

                                  * * *  

          7.  That the City has executed a Parking Space Lease

     Agreement, *** and that the said Lease is of a certain

     public parking lot, *** situated fifty-two feet West of

     the Relators' hereinabove described real estate ***.    

          8.  That public parking is provided for the

     Relators' hereinabove described real estate by the public

     parking lot the City proposes to lease for up to ninety-

     nine years; and that the termination of the public's use

     of the said public parking lot for any period of time

     directly and adversely affects the Relators in a way that

     is not shared in common with the public at large in that

     it deprives the Relators of the benefit of a convenient

     off street public parking lot ***."  (Emphasis added.)  

     Based upon the foregoing allegations in the Vuagniauxes' com-

plaint, we cannot find that the trial court abused its discretion

in finding that the Vuagniauxes had standing to file the quo

warranto complaint.  The facts that the Vuagniauxes own commercial

real estate located 52 feet from the said public parking lot and

that they have alleged that the leasing of this public parking lot

has deprived them of convenient off-street parking show that they

have a personal interest sufficiently distinct from the general

public's interest.  

     For all of the foregoing reasons, we affirm the trial court's

order granting plaintiffs leave to file a complaint in quo warran-

to, we reverse the trial court's order granting summary judgment in

favor of the City, and we remand for further proceedings.    

     Affirmed in part and reversed in part; cause remanded. 

     HOPKINS, P.J., and GOLDENHERSH, J., concur.

                                      NO. 5-95-0655

                                     IN THE

                          APPELLATE COURT OF ILLINOIS

                                 FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE ex rel. EARL L. VUAGNIAUX  )  Appeal from the

and ALICE G. VUAGNIAUX,               )  Circuit Court of 

                                      )  Madison County.

     Plaintiffs-Appellants,           )

                                      )

v.                                    )  No. 94-MR-325

                                      )

CITY OF EDWARDSVILLE, A Municipal     )

Corporation of the State of Illinois, )  Honorable

                                      )  David Herndon,

     Defendant-Appellee.              )  Judge, presiding.

___________________________________________________________________________

Opinion Filed:      

___________________________________________________________________________

Justices:      Honorable Gordon E. Maag, J.

                         

               Honorable Terrence J. Hopkins, P.J., and 

               Honorable Richard P. Goldenhersh, J.,

               Concur

___________________________________________________________________________

                         

Attorney       Earl L. Vuagniaux, Earl L. Vuagniaux, A Professional

for            Corporation, 118 St. Louis Street, P.O. Drawer 446,

Appellant      Edwardsville, IL 62025-0446

___________________________________________________________________________

Attorneys      Debra J. Meadows, Reed, Armstrong, Gorman, Coffey, Gilbert &

for            Mudge, P.C., 125 N. Buchanan, P.O. Box 247, Edwardsville, IL

Appellee       62025

___________________________________________________________________________