STANLEY MAKOWICZ, Superintendent of Veterans Assistance Commission of Macon County, Plaintiff-Appellee, *v.* THE COUNTY OF MACON, Defendant-Appellant.

Fourth District   No. 15018

Opinion filed February 7, 1979.

TRAPP, J., dissenting.

Patrick M. Walsh, State's Attorney, of Decatur, for appellant.

Vernon H. Houchen, Special Assistant State's Attorney, of Decatur, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Stanley Makowicz, as superintendent of the Veterans Assistance Commission of Macon County, brought suit in the circuit court of that county against defendant, the County of Macon. He requested a declaratory judgment determining the status of secretaries and other employees of the Commission with reference to their selection and discharge. After the case was at issue, a hearing was held at which no evidence was presented but various facts were agreed upon. Subsequently, the trial court entered an order declaring that (1) the provisions of "An Act to regulate the granting of assistance to indigent war veterans and their families" (Ill. Rev. Stat. 1977, ch. 23, par. 3081 *et seq.*), providing for the relief of indigent war veterans and for the formation of the Commission are constitutional and binding upon the parties, (2) the secretary and other employees of the Commission are employees of that group and not the County, and (3) the secretary and other employees are subject to hiring and discharge under the rules, bylaws and constitution of the Commission and not the personnel policies of the County. The County appeals.

The Veterans Assistance Commission of Macon County was formed on December 7, 1949, apparently by the combined action of various veterans groups under the provisions of Ill. Rev. Stat. 1949, ch. 23, pars.

154 and 154i. That legislation, although subsequently amended, appears now in substantially the same form in Ill. Rev. Stat. 1977, ch. 23, pars. 3089 and 3090. It is part of "An Act to regulate the granting of assistance to indigent war veterans and their families." (Approved May 25, 1907, 1907 Ill. Laws, at 79. Title as amended by act approved July 17, 1945, 1945 Ill. Laws, at 396, §2 (Ill. Rev. Stat. 1977, ch. 23, pars. 3081 to 3090).) It is commonly known as the "Bogardus Law." This legislation places a duty upon counties to provide assistance for needy veterans of certain periods of military and naval service and their surviving family members and authorizes certain officers of named veterans groups to draw from county funds on behalf of these persons. In counties where there exist units of several such veterans organizations, it provides for the formation of a Commission formed by representatives and alternates named by these units. The Commission is to perform the same functions as would otherwise be done by the units and to have "oversight of the distribution" of benefits to veterans (Ill. Rev. Stat. 1977, ch. 23, par. 3089). The full function of the Commission is not entirely clear but the Bogardus Law has been described as a method by which veterans organizations may cooperate with designated officials in furnishing relief to eligible war veterans. *Town of City of Galesburg v. Town of Kewanee* (1942), 313 Ill. App. 268, 39 N.E.2d 725 (abstract).

The executive powers of the Commission are stated to be vested in a superintendent "elected by the Commission" from among veterans of service during various wars and periods of national emergency. The superintendent is directed to maintain an office in the county building and, subject to rules formulated by the Commission, "select secretaries and other employees as far as possible from" veterans of certain periods of service or their widows. With exceptions not pertinent here, persons so selected or elected are exempt from civil service laws of the State. It is also stated that the secretary of the Commission shall be appointed by the superintendent. Ill. Rev. Stat. 1977, ch. 23, par. 3090.

The complaint for declaratory judgment alleged that: (1) the Commission employed a superintendent and certain temporary help; (2) prior to March 14, 1977, a secretary and one or more employees of the Commission were discharged by either the members of the Commission or the superintendent; (3) defendant County had received an opinion from its State's Attorney stating that all Commission employees other than the superintendent are employees of the defendant County; and (4) because of the statutory provision we have cited which appears to state otherwise, an actual controversy existed. After a motion by the defendant to dismiss was denied, it answered, admitting most of the factual allegations of the complaint.

On appeal, defendant asserts that the portion of the legislation

authorizing the Commission to appoint its superintendent is unconstitutional because it provides for the selection by representatives of private groups, here the Commission members, of an official, the superintendent, who exercises the sovereign power of the government. It argues that this, in turn, vitiates the superintendent's appointments of personnel. Defendant also claims that, regardless of the constitutional problem, the statute does not preclude the county board from regulating and firing Commission personnel other than the superintendent.

■■ We are not persuaded by the latter contention of defendant, standing alone, because we are satisfied that the stated statutory scheme is for the superintendent to have the power to both hire and fire the personnel. The power to hire is expressly stated. No reference is made as to the power to fire, but where municipal employees are appointed to "an office or position, where the * * * tenure is not defined," the power to appoint "carries with it the power of removal." 3 McQuillin, Municipal Corporations §12.115, at 490 (3d ed. rev. 1973).

■■ The constitutional question presents a much more difficult problem. In *People ex rel. Rudman v. Rini* (1976), 64 Ill. 2d 321, 356 N.E.2d 4, the supreme court ruled legislation purporting to authorize the filling, until the next election, of a vacancy on county boards by the central committee of the political party of which the incumbent was a member, to be unconstitutional as delegating to a private group the power to appoint a public official. Previously, in *Lasher v. People* (1899), 183 Ill. 226, 55 N.E. 663, the supreme court similarly ruled invalid legislation providing for a board of inspectors which licensed certain sellers of agricultural products. The statute provided that the licensing board members were to be appointed, one each by five named private organizations with expertise and interest in the field. In *Carter v. Carter Coal Co.* (1935), 298 U.S. 238, 80 L. Ed. 1160, 56 S. Ct. 885, the United States Supreme Court declared invalid legislation that delegated the power to organizations of employers and employees to make binding regulations as to wages and working conditions in the coal industry. The essence of each of these decisions was that those appointed by private entities cannot be delegated an exercise of the sovereign power of the government. That power can only be exercised by someone elected or someone appointed by some person or body whose selection is traceable to the electorate.

■■ By the terms of section 10 of "An Act to regulate the granting of assistance to indigent war veterans and their families" (Ill. Rev. Stat. 1977, ch. 23, par. 3090), the superintendent of the Commission is (1) "vested" with its "executive power," (2) directed to maintain an office, (3) empowered to select employees, and (4) required to furnish bond. He is, thus, an official. Although his sovereign power is less than that of a county board member (*Rudman*) or a member of a board of licensing inspectors

(*Lasher*) or committee to set labor standards in the coal industry (*Carter*), he does exercise some of the sovereign power of the government. We cannot equate the appointment of such an official by representatives of private groups with the requirements of *Rudman*. This is so regardless of how public-spirited the private groups may be, the derivation of their charter, the sacrifice required to achieve membership in the groups, or the devotion of those groups to interest of its comrades and expertise in their problems. We conclude that the portion of the legislation authorizing the Commission to appoint the superintendent is unconstitutional.

The legislation known as the Bogardus Law has a long history. No legislature has seen fit to repeal its essential features of participation by veterans groups in aiding indigent veterans to receive assistance. Because of the long-standing existence of the legislation, there is a presumption of its constitutionality. (*People ex rel. Schlaeger v. Jarmuth* (1947), 398 Ill. 66, 75 N.E.2d 367.) In *People ex rel. Voorhees v. Chicago, Burlington & Quincy R.R. Co.* (1944), 386 Ill. 200, 53 N.E.2d 963; *People ex rel. Little v. Peoria & Eastern Ry. Co.* (1943), 383 Ill. 79, 48 N.E.2d 518; *People ex rel. McDonough v. Mills Novelty Co.* (1934), 357 Ill. 285, 192 N.E. 236; and *Ickes v. Board of Supervisors* (1953), 415 Ill. 557, 114 N.E.2d 669, the general validity of the legislation has been recognized in dictum. In *Ickes*, the court ruled that the amount which the county had to appropriate to the Commission was a matter of discretion with the governing board of the county and reversed an order mandating the county to appropriate a particular sum.

■■ The plaintiff in *Ickes* was the then superintendent of the Commission. Prior to that case, he had, in his official capacity, successfully sued Macon County in the circuit court of that county to make some appropriation for the Commission. In that earlier proceeding, questions were raised as to (1) the constitutional power of the Commission as private individuals and organizations to create debts and obligations of the county and (2) the aspects of the legislation which purported to confer rights and privileges upon those veterans only who belonged to the named organizations. An appeal was taken from the order of mandamus but the appeal was not prosecuted and was later dismissed. As the plaintiff here is the successor in office to that plaintiff and the defendant is the same entity, that judgment is res judicata as to those issues.

■■■ Under the circumstances we deem it appropriate to declare only the provisions of section 10 (Ill. Rev. Stat. 1977, ch. 23, par. 3090) which provide for the appointment of the superintendent by the Commission and for the formulation by the Commission of rules for the appointment of other personnel to be unconstitutional. In the absence of a valid designation for the appointment of a superintendent, that responsibility would fall, by implication, upon the County Board. Once the proper

chain between the superintendent and the electorate is established, no constitutional bar exists to appointments by the superintendents which are provided by statute. Having the power to hire, he would also have the power to fire. We interpret the legislation to indicate that appointees of the superintendent would not be subject to the general personnel policies of the County.

■■ Prior to the effective date of an order declaring the foregoing portions of the statute unconstitutional, acts of the present superintendent and prior superintendents in hiring and firing personnel are and were those of a defacto officer and thus are not vitiated by the unconstitutionality of their method of appointment. 63 Am. Jur. 2d *Public Officers and Employees* §493 (1972); *People ex rel. Rusch v. Wortman* (1928), 334 Ill. 298, 165 N.E. 788.

We reverse the judgment of the circuit court of Macon County and remand the case to that court with directions that a declaratory judgment be entered consistent with the determinations expressed in this opinion.

Reversed and remanded with directions.

CRAVEN, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

While "An Act to regulate the granting of assistance to indigent war veterans and their families" (Ill. Rev. Stat. 1977, ch. 23, pars. 3082 through 3090) was originally passed in 1907, an examination of the annotated statutes discloses that it has been the subject of frequent legislative examination and amendment. One finds amendments as recently as 1975 (par. 3082), 1973 (par. 3084), and 1971 (pars. 3089, 3090). In the context of legislative concern, the theme of the Act has not lain fallow and forgotten since 1907.

The principal opinion apparently concludes that the Act is unconstitutional in that the superintendent of the Veterans Assistance Commission is authorized "to draw from county funds" and that he exercises his sovereign power and is vested with executive power presumably through the selections of Commission employees.

A fair reading of the statute supports the contrary conclusion. In sum, the superintendent of the Commission is limited to the making of recommendations to the respective township or county authorities for the granting of assistance to veterans. Section 2 (par. 3082) provides that the county board shall provide such sums of money as may be just and necessary for the assistance of veterans and that if any county board fails or refuses after such recommendation to provide any just and necessary sum of money for such assistance, the superintendent "shall apply" to the circuit court "for a writ of mandamus upon the supervisor of general

assistance or county board requiring him or it to pay, or to appropriate and pay such sums of money, and upon proof made of the *justice and necessity of the claim*, the circuit court shall issue such writ." (Emphasis supplied.) Ill. Rev. Stat. 1977, ch. 111½, par. 3082.

In section 9 (par. 3089) of the statute, it is provided that:

"The Commission and the president or chairman of the county board, or some other county officer appointed by him shall have general oversight of the distribution of all moneys and supplies appropriated by the county for the benefit of indigent veterans * * *. No warrant authorized under this Act may be issued for the payment of money without the presentation of an itemized statement or claim, approved by the superintendent of the commission and the chairman of the county board, or some other county officer designated by him." Ill. Rev. Stat. 1977, ch. 111½, par. 3089.

It appears clear that with such statutory limitation neither the superintendent of the Commission nor any other officer of a veterans organization appropriates money of the county or any other public fund for the reason that any sum spent by the superintendent or the Commission is approved by the county board or paid upon order of the circuit court.

The statute apparently contemplates that members of a veterans organization would do the field work in identifying any veteran deemed to be in need and then make recommendation for the action of the county board. In the context of such activity, there is no actual or apparent reason to conclude that the selection of Commission employees is an exercise of sovereign power.

In section 10 (par. 3090) of the statute, it is provided that county boards shall appropriate such sums as may be deemed necessary to compensate officers and employees of the Commission necessary to administer such assistance. In *Ickes v. Board of Supervisors* (1953), 415 Ill. 557, 114 N.E.2d 669, the court said in speaking to the issue:

"The act does not say that the appropriation must be in the amounts recommended by the commission. It states purely and simply that the board shall appropriate such amounts as may be deemed necessary to properly compensate employees. What is a proper compensation is certainly within the discretion of the board." 415 Ill. 557, 562, 114 N.E.2d 669, 671.

It appearing that that statute does not, in effect, authorize the superintendent to appropriate public funds or exercise sovereign power, I would affirm the order of the trial court. Upon such facts as shown here, the opinion in *People ex rel. Rudman v. Rini* (1976), 64 Ill. 2d 321, 356 N.E.2d 4, is clearly distinguishable.