Thomas A. **UNDERWOOD**, Plaintiff,

v.

**Roy D. WADDELL, Individually, and as Sheriff, Hendricks County, Indiana, Defendants, and**

**Indiana Sheriff's Association, Intervenor–Defendant.**

No. IP89–600–C.

United States District Court, S.D. Indiana, Indianapolis Division.

July 23, 1990.

Kenneth Collier–Mager, Stephenson and Kurnik, Indianapolis, Ind., for plaintiff.

John C. Ruckelshaus, Ruckelshaus Roland Hasbrook & O'Connor, Indianapolis, Ind., for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

██ This cause comes before the Court on the motion for summary judgment filed by Sheriff Waddell. The issues raised have been briefed and are ready for resolution. For the reasons set forth below, the Court GRANTS IN PART the motion.

## I. *Factual and Procedural Background:*[1]

Defendant Roy Waddell assumed the office of Hendricks County Sheriff in 1983, and appointed plaintiff Thomas Underwood as his Chief Deputy. Waddell and Underwood had been friends for many years, and had previously worked together with the State Police. When Waddell ran for Sheriff in 1983, Underwood helped him campaign in the primary and the general election.

Prior to being appointed as Chief Deputy, Underwood was not a member of the Hendricks County Sheriff's Department. Underwood was appointed solely by Sheriff Waddell, and did not go through the Merit Board system of hiring through which regular deputies are hired. The position of Chief Deputy is one of great confidence vis a' vis the Sheriff. The Chief Deputy is the second in command in the Sheriff's Department, and the Chief Deputy reports only to the Sheriff.

Underwood did not become a member of the County Pension Plan upon being appointed Chief Deputy as the Plan only included merit-appointed deputies. In 1984, Underwood requested that Sheriff Waddell include him in the Pension Plan. The Sheriff contacted the Plan's actuary regarding this, and after the Sheriff Department's legal counsel rendered an opinion that the Chief Deputy could participate in the Plan, Underwood became a member of the Plan.

In June of 1988, Underwood attended the Indiana Fraternal Order of Police ("FOP") conference, along with approximately 400 other FOP members. Underwood and three or four other delegates from his local Lodge attended the conference together. During the conference, a motion was made, seconded, and passed to oppose Proposition 3 on the state ballot. Proposition 3 would have given certain county office holders the option to hold office for more than two terms. If passed, Proposition 3 would have allowed Sheriff Waddell to run for a third term in the fall of 1988.

Underwood personally took no actions to oppose Proposition 3. He "probably communicated" his opposition to Proposition 3 to Sheriff Waddell at one time in the summer of 1988. The subject arose in the context of a conversation in which Waddell stated that if the Proposition were passed he might consider running for another term. Other than discussing Proposition 3 with Waddell on this one occasion, Underwood did not voice his opposition to the Proposition to any other members of the Sheriff's Department after the conference.

In October of 1988, Sheriff Waddell asked Underwood to resign, at least in part because of a belief that Underwood was going to actively oppose Proposition 3. Underwood declined the offer to resign, and told Waddell that he "was not openly campaigning for Proposition 3 to be turned down" as it "was not an issue that [Underwood] was even concerned with." Several days later Waddell telephoned Underwood at home and stated that he had changed his mind about asking for his resignation.

After this incident in October of 1988, Underwood regained confidence in Sheriff

---

**1.** For purposes of this motion for summary judgment, the facts relayed are taken from the deposition of the plaintiff taken and filed by the defendant, and the affidavits filed by the defendants in support of this motion. All facts relayed in this opinion are determined to be admissible under Rule 56(e) and are taken favorably for the non-movant plaintiff. Although plaintiff filed a motion to strike the affidavits, the motion must be denied for failure to specify what specific portions of the affidavits are objectionable. Moreover, a review of the affidavits reveals that the affiants are competent to testify, that much of the testimony is based upon the affiants' personal knowledge, and that much of the testimony is relevant, non-hearsay evidence. To the extent that any matters are irrelevant or otherwise inadmissible, the Court has not considered them in ruling on this motion.

The Court also notes that, although plaintiff has included a detailed statement of facts in his response brief, plaintiff has failed to comply with Local Rule 11 requiring the filing of a "statement of genuine issues." Nonetheless, even though the Court need not scour the record when a non-movant fails to make its own record, *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989), the Court has independently reviewed all of the affidavits and the deposition on file.

Waddell, their relationship returned to normal, and their friendship seemed "pretty solid." However, on May 16, 1989, Waddell terminated Underwood's employment effective immediately. Waddell told Underwood that "things weren't working out," and asked him to resign. Underwood stated that because "you hired me you're going to have to fire me because I don't feel like I should resign." Sheriff Waddell then terminated Underwood.

On June 16, 1989, Underwood filed this lawsuit against Roy Waddell, individually and as Sheriff of Hendricks County. Underwood bases his action on 42 U.S.C. § 1983, and alleges in Count One of his Complaint that Waddell violated his rights under the Fifth and Fourteenth Amendments by terminating him without due process. In Count Two, Underwood alleges that his discharge was in retaliation for his efforts to defeat Proposition 3, and that his First Amendment free speech rights were thus violated. In both Counts, plaintiff seeks reinstatement, compensatory damages, punitive damages, costs, and attorney's fees.

Defendant previously moved to dismiss, and in an Order dated January 26, 1990, this Court granted in part and denied in part the motion. The Court ruled that Waddell was entitled to qualified immunity on the due process claim, but that Underwood had, on the basis of his allegations in the Complaint, stated a claim under the First Amendment. The Court deferred ruling on the property interest question of the due process claim because the issue in this case is one of state law that has not been addressed by any court.

At this juncture, however, the issues are more clearly framed and there is no reason to delay ruling on these matters. This is particularly true in this instance because the property interest issue presents a question of law, and the facts surrounding this issue are not in dispute. *See Colburn v. Trustees of Indiana University,* 739 F.Supp. 1268, 1290 (S.D.Ind.1990) (where interpretation of statute is only question in property interest issue, it is question of law).[2]

## II. *Summary Judgment Standards:*

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the ... [record] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further requires that when a motion for summary judgment is made and properly supported, the non-movant cannot rest upon the mere allegations of his pleadings but must set forth specific facts showing that there is a genuine issue for trial.

Since the Supreme Court's trilogy of decisions on summary judgment, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), it is clear that the mandatory aspects of Rule 56 must be followed. Decisions of the Seventh Circuit reflect this change in attitude as well. *See, e.g., Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir.1989); *Spellman v. Commissioner,* 845 F.2d 148, 152 (7th Cir.1988); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473 (7th Cir.1988).

With these standards at hand, the Court will address the substantive questions raised.

## III. *Discussion:*

*Plaintiff did not have a property interest in his appointed position as Chief Deputy:*

■ Underwood asserts that he had a protected property interest in his position

---

**2.** The Court informed the parties on July 19, 1990, that it was ruling for the defendants on the property interest claim, and that a memorandum opinion to this effect would be issued forthwith. The Court also advised the parties that the First Amendment issues, which had not yet been decided, would be addressed in the same opinion. However, just as the Court neared completion of the First Amendment issues, the parties informed the Court that a settlement had been reached. Accordingly, today's opinion deals only with the property interest question that had been previously decided.

as Chief Deputy, and that as a result his termination without notice or opportunity to be heard violated his due process rights. As is seen below, resolution of this issue is purely a matter of statutory construction, but one that requires extensive discussion.

"Ever since *Board of Regents v. Roth,* [408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1976)], the basic criteria for the recognition of a property interest have been well established[.]" *Thornton v. Barnes,* 890 F.2d 1380, 1386 (7th Cir.1989). "Property interests are not created by the Constitution but are 'defined by existing rules or understandings that stem from an independent source such as state law' and arise only where the plaintiff demonstrates a 'legitimate claim of entitlement.'" *Polenz v. Parrott,* 883 F.2d 551, 555 (7th Cir.1989) (*quoting Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). "Therefore, property interests in employment may be created by express or implied contracts, municipal ordinances[,] or state laws—including those 'rules or understandings that secure benefits and that support claims of entitlement to those benefits.'" *Thornton,* 890 F.2d at 1386 (*quoting Farmer v. Lane,* 864 F.2d 473, 478 (7th Cir.1988)).

■ The state law or ordinance relied upon, however, must provide more than procedure, for there "is neither a 'liberty' nor a 'property interest' in procedures themselves...." *Fleury v. Clayton,* 847 F.2d 1229, 1231 (7th Cir.1988). As the Seventh Circuit has written, "In order to give rise to a constitutionally-protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion—as can be found, for example, in a requirement that employees be fired only 'for cause.'" *Cain v. Larson,* 879 F.2d 1424, 1426 (7th Cir.1989). "If a statute or regulation merely delimits what procedures must be followed before an employee is fired, then it does not contain the requisite substantive procedure." *Id.*

In this case, Underwood bases his claim to a property interest on a provision of the Indiana Code governing Sheriffs' departments. Specifically, Underwood relies upon *Ind.Code* § 36–8–10–11, which provides that a sheriff may terminate a county police officer for cause after certain procedural steps are followed. Section 11 of this chapter reads as follows:

(a) The sheriff may dismiss, demote, or temporarily suspend a county police officer for cause after preferring charges in writing and after a fair public hearing before the [merit] board, which is reviewable in the circuit court. A notice of the charges and hearing must be delivered by certified mail to the officer to be disciplined. The officer may be represented by counsel.

\* \* \* \* \* \*

(d) An officer on probation may be dismissed by the sheriff without a right to a hearing.

*Ind.Code* § 36–8–10–11(a), (d). (West Supp.1989).

Underwood asserts that he was a "county police officer" under this provision and thus had a protected property interest. Sheriff Waddell, however, argues that under Section 10 of the same chapter, the Sheriff has complete authority to hire and fire his Chief Deputy for any reason. Specifically, the Sheriff relies upon the following provision, which in 1988 read as follows:

(a) *Except for the positions of chief deputy and prison matron, over which the sheriff has complete hiring authority,* the sheriff, with the approval of the board, shall establish a classification of ranks, grades, and positions for county police officers in the department. For each rank, grade, and position established, the sheriff, with the approval of the board, shall set reasonable standards of qualifications and fix the prerequisites of training, education, and experience.

(b) The sheriff, with the approval of the board, shall devise and administer examinations to test applicants for the qualifications required for the respective ranks, grades, or positions. Only those applicants who in the opinion of the sheriff and the board best meet the prescribed standards may be appointed. All county police officers appointed to the depart-

ment under this chapter are on probation for a period of one (1) year from the date of appointment.

*Ind.Code* § 36–8–10–10 (1988) (emphasis added).

Thus, it is seen that if Section 11 applies to Underwood, he could not be dismissed except for cause, and then only after certain procedural steps were followed. Such a statutory provision, if it applies, certainly meets the property interest requirements set forth above.

The narrow question, then, is whether Section 10 of the chapter, which gives the Sheriff "complete hiring authority" over the positions of chief deputy and prison matron, allows the Sheriff to terminate a Chief Deputy without the substantive and procedural protections otherwise provided by Section 11 of the chapter.

To date, no reported opinions have addressed this issue, and the arguments on both sides certainly have merit given the imperfect statutory scheme. A terminated chief deputy can justifiably argue that he is a "county police officer" entitled to the protections of Section 11, while the sheriff can reasonably assert that his "complete hiring authority" over chief deputies under Section 10 gives him the right to fire a chief deputy outside the restrictions of Section 11.

Thus, the statutory scheme is ambiguous. As a result, though not specifically addressed by the parties, the Court must look to the tools of statutory construction to determine what import the statute shall be given. *Ott v. Johnson*, 262 Ind. 548, 319 N.E.2d 622, 624 (1974) (if statute is ambiguous, courts can search for legislative intent); *Daugherty v. State*, 466 N.E.2d 46, 52 (Ind.App.1984) (same); *Siddell v. Review Bd of Indiana Emp. Sec. Division*, 428 N.E.2d 281, 284 (Ind.App. 1981) (same). After considering the matter and invoking the relevant canons of construction, this Court determines that the county sheriffs do, in fact, have the power to hire and fire their chief deputies at will. The Court reaches this conclusion for several reasons.

■ The first consideration is that statutes in derogation of common law must be strictly construed. *Helms v. American Sec. Co. of Indiana*, 216 Ind. 1, 22 N.E.2d 822, 824 (1939); *Stream Pollution Control Bd. of State of Ind. v. U.S. Steel, Inc.*, 62 F.R.D. 31, 34 (N.D.Ind.1974). As the Indiana Supreme Court recently noted, courts presume that the legislature is aware of the common law and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication when enacting statute in derogation of common law. *State Farm Fire & Cas. Co. v. Structo Div., King Seeley Thermos Co.*, 540 N.E.2d 597, 598 (Ind.1989).

■ Under the common law of Indiana, all employees are deemed to serve at the will of their employer if there is not an agreement for a definite period of employment. *Rice v. Grant County Bd. of Commissioners*, 472 N.E.2d 213, 214 (Ind.App. 1984); *Montgomery Ward & Co. v. Guignet*, 112 Ind.App. 661, 45 N.E.2d 337, 341 (1943). Thus, the Merit Board statute, which gives "county police officers" rights above and beyond the common law in Section 11 but which gives sheriffs "complete hiring authority" over their chief deputy in Section 10, must be strictly construed to depart as little as reasonably possible from the employee-at-will rule of the common law. In this setting, this supports the conclusion that chief deputies are employees-at-will who serve at the pleasure of the sheriff.

■ A second rule of construction is that the testimony from the drafters of the legislation may be relevant and useful in ascertaining the meaning of an ambiguous statute. *Indiana Aeronautics Comm. v. Ambassadair, Inc.*, 267 Ind. 137, 368 N.E.2d 1340, 1344 (1977); *Foremost Life Ins. Co. v. Dept. of Insurance*, 395 N.E.2d 418, 428 (Ind.App.1979), *vacated on other grounds* 274 Ind. 181, 409 N.E.2d 1092 (1980). In this case, then, the Court may look to the affidavits of two individuals who, as members of the Indiana General

Assembly, co-authored Section 10 of the present statute.[3]

In their affidavits, the co-authors state that they were requested by the Indiana Sheriff's Association to author the bill giving sheriffs the "complete hiring authority" over chief deputies. Each legislator further testifies as follows:

As a co-author of the bill, I was advised that the purpose of the bill was to give the sheriff, without the approval of the Merit Board, complete hiring authority over the positions of first deputy and matron.

It was my intent and I believe the legislative intent that ... [the phrase] 'complete hiring authority' included not only the right to hire but also the 'right to fire' the chief deputy without a hearing as required for county policemen.

Although the first paragraph, without more, is inadmissible hearsay at this juncture, the rest of the testimony is instructive in this setting, particularly where the plaintiff has not offered any legislative history to the contrary. Accordingly, these affidavits also support the conclusion that chief deputies lack a property interest in their position.

A third rule of statutory construction provides that the interpretation of the law given by those to whom it applies is to be given deference. *Aaron v. Review Bd. of Indiana Emp. Sec. Division*, 416 N.E.2d 125, 139 (Ind.App.1981); *Heminger v. Police Commission of City of Fort Wayne*, 161 Ind.App. 72, 314 N.E.2d 827, 838 (1974). Although the administrative interpretation is not controlling, *Middleton v. Scott Circuit Court*, 214 Ind. 643, 17 N.E.2d 464, 467 (1938), a practical construction given by public officers and acted upon by those interested is to be considered. *Zoercher v. Indiana Assoc. Tel. Corp.*, 211 Ind. 447, 7 N.E.2d 282, 286 (1937).

As the facts of today's case demonstrate, the Sheriff of the Hendricks County Sheriff's Department has, for some time prior to the filing of this lawsuit as well as

thereafter, operated under the assumption that sheriffs in Indiana have the power to hire chief deputies independently of a merit board. Indeed, in this case Underwood, who was not a member of the Hancock County Sheriff's Department, was simply appointed by Sheriff Waddell without any other entity's intervention or permission. Plaintiff has not come forth with any evidence suggesting that any other counties treat this matter any differently.

This also tends to support the conclusion that sheriffs have the unfettered authority to dismiss their chief deputy, for if the chief deputy does not have to suffer the burdens of the merit statute in obtaining employment, it is logical to conclude that the chief deputy does not receive its protections upon discharge.

An additional consideration is that in ascertaining legislative intent, the entire statute and the object sought to be attained must be accorded weight. *Indiana State Highway Comm. v. White*, 259 Ind. 690, 291 N.E.2d 550, 553 (1973); *Combs v. Cook*, 238 Ind. 392, 151 N.E.2d 144, 147 (1958). Moreover, statutes are to be construed, where reasonably possible, to give efficient operation to the purpose of the language. *Dunkle v. State*, 241 Ind. 548, 173 N.E.2d 657, 659 (1961).

In this case, the facts undisputably show that the position of chief deputy is unique within a sheriff's department. The chief deputy is the sheriff's "right hand man" and confidant, and the chief deputy reports only to the sheriff. It is thus not surprising that Sheriff Waddell appointed Underwood, for he had campaigned diligently for him in both the primary and general election, and he was a newcomer to the Hancock County Sheriff's Department. In short, the politics were such that Waddell felt he could confide in his Chief Deputy.

By giving sheriffs the "complete hiring authority" over their chief deputy, the legislature must have intended to confer the corresponding firing authority as well.

---

**3.** These affidavits were proffered by the Indiana Sheriff's Association, which was allowed to in-

tervene in this case in January of 1990.

True, it is unfortunate that the legislature did not make this clearer by using explicit "firing" language. Nonetheless, to rule otherwise would force sheriffs to retain a chief deputy, a position that is obviously intended to be one of great confidence, even when that deputy's behavior has destroyed that trust. It is easy to imagine a variety of actions or behaviors on the chief deputy's part that would betray the special relationship between the sheriff and his chief deputy, but that would not rise to the level of "cause" warranting dismissal.

In short, it is entirely logical to conclude that the reason the legislature gave sheriff's complete hiring authority over their chief deputy was to promote the efficient operation of sheriff departments by providing the sheriff with a deputy in which he could confide. This legislative purpose would be thwarted if the term "complete hiring authority" did not also include the power to fire at will.

■ Finally, another relevant canon of construction holds that when a term of art that has a particular meaning in the law is used in a statute, the statute should be interpreted using that meaning. *Indiana Dept. of Revenue v. Colpaert Realty Corp.*, 231 Ind. 463, 109 N.E.2d 415, 419–20 (1952). As the Indiana Supreme Court made clear in *Gary Taxpayers Assoc. v. Lake Superior Court*, 225 Ind. 478, 76 N.E.2d 254, 260 (1948), in the absence of a legislative intent to the contrary, legal terms in a statute are presumed to have been used in their legal sense.

In this setting, terms such as "complete hiring authority," like terms such as the "right to hire" or the "power of appointment," have traditionally carried with them just such a particular legal meaning. Inclusive in that meaning is that when an individual has been vested with such hiring or appointing power, he has also be given equal firing authority.

Although the parties have not cited cases to this effect, the Court's own research reveals numerous decisions from a broad spectrum of jurisdictions that recognize this. Perhaps the earliest and most influential are the United States Supreme Court

decisions dealing with the President's appointment powers. In Article II, Section 2, clause 2 of the Constitution, the President is vested with the power to appoint officers, subject to the advice and consent of the Senate. Notwithstanding the fact that Article II nowhere specifically gives the President the power to remove his officers, the Supreme Court ruled more than 150 years ago that the power of removal is incident to the power of appointment. *Ex Parte Hennen*, 38 U.S. (13 Pet.) 230, 10 L.Ed. 138 (1839). This implicit removal power has been reconfirmed on several occasions since then. *See, e.g., Keim v. United States*, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900); *Shurtleff v. United States*, 189 U.S. 311, 23 S.Ct. 535, 47 L.Ed. 828 (1903).

■ Moreover, and perhaps because of the Supreme Court's early interpretations of the President's appointment and removal powers of Article II, the general rule throughout this country is that the power to hire necessarily and implicitly carries with it the power to fire. *See, e.g., Makowicz v. County of Macon*, 68 Ill.App.3d 322, 24 Ill.Dec. 776, 778, 385 N.E.2d 917, 919 (1979) (even though no express reference was made in statute to power to fire, the power to hire existed because the "power to appoint carries with it the power of removal."); *Adamczyk v. Town of Caledonia*, 52 Wis.2d 270, 190 N.W.2d 137, 140 (1971) ("the power of removal is regarded as incident to the power of appointment"); *Richmond County v. Jackson*, 234 Ga. 717, 218 S.E.2d 11, 12 (1975) ("power to hire carries with it the implied power to fire"); *Picard v. Brennan*, 307 A.2d 833 (Me.1973) ("The right to hire implies the right to fire"); *Fairbanks Publishing Co. v. Pitka*, 445 P.2d 685, 689 (Alaska 1968) (same). No authority to the contrary has been located.

In this respect it must also be noted that the legislature seemed to emphasize the broadness of the sheriff's powers by inserting the adjective "complete" to describe them in Section 11. Thus, when the legislature chose to vest county sheriffs with complete hiring authority of their chief

deputy, it implicitly gave them complete firing authority, unencumbered by any merit board procedures or "for cause only" limitations.

In opposition to the conclusion that there is no property interest, the plaintiff's main argument is that the legislature knew how to expressly give county sheriff's such firing authority, but intentionally opted not to do so. Specifically, Underwood points to Section 10.6 of this statutory scheme wherein the legislature, after giving sheriffs the power to appoint "special deputies," went on to state that a special deputy "may be removed by the sheriff at any time, without notice and without assigning cause." *Ind. Code* § 36–8–10–10.6.

■ Although this argument initially has some appeal, on closer examination it is seen that Section 10.6 can also support the conclusion that the complete hiring authority given in Section 11 includes the power to fire at will. First, the two sections were passed and amended at different times, with the "complete hiring authority" provision of Section 11 coming many years after the more specific special deputy provisions of Section 10.6. Thus, besides referring to different subjects,[4] the provisions need not be read in *pari materia* because they were not adopted during the same session. *Compare Combs v. Cook*, 238 Ind. 392, 151 N.E.2d 144, 147 (1958) (laws passed at same session must be construed in *pari materia* ). The logic of this is that one would not expect the legislature to be focused upon the particular language used in the special deputy provisions when it decided to speak to chief deputies many years later.

In addition, the language of the special deputy provisions shows that, unlike in the chief deputy context, the legislature needed to specifically confer the power to remove at will. This is so because in attempting to give special deputies the full law enforcement powers required to perform their special duties, the legislature included the following mandate:

> During the term of his appointment and while he is fulfilling the specific responsibilities for which the appointment is made, a special deputy has the powers, *privileges*, and duties of a county police officer under this chapter. . . .

*Ind. Code* § 36–8–10–10.6 (emphasis added).

Thus, had the legislature not expressly stated that special deputies may be removed without notice and cause, the special deputies would have been covered by the "for cause" limitations of Section 11. In the context of chief deputies, though, the legislature did not need to make this explicit because the legislature never specifically conferred the full privileges of a county police officer upon chief deputies.

A final argument that is implicitly raised by Underwood but not fully developed is that by allowing him to become a member of the pension plan, the county recognized his rights as being the same as all other deputies. This argument also has some appeal, particularly when the definition section of the statute is examined. Specifically, Section 2 provides that one is an "eligible employee" of the pension fund if he is the "sheriff of a county or a county police officer." *Ind. Code* § 36–8–10–2. Relying on this definition, Underwood can make a reasonable argument that he is entitled to the notice and hearing protections of Section 11.

His theory here would be that his status as a pension fund member proves that he was either the "sheriff or a county police officer" under the definitional section. Because he obviously was not the sheriff, he must, the argument goes, be a "county police officer." Under Section 11, "county police officers" may not be dismissed without cause. Thus, the argument concludes, Underwood is entitled to the protections of Section 11 as a county police officer.

The Court notes the logical appeal of this theory, but rejects it in light of the per-

**4.** Under Section 10.6, sheriffs may confer special deputy status upon a person who is employed by a governmental entity or private employer in a situation in which that person needs to have the powers of a law enforcement officer. On the other hand, a chief deputy, though not specifically defined in the statute, is the full time confidant of the sheriff.

suasive force of the canons of statutory construction in this case and the fact that the admission of Underwood to the pension fund is not, without more, controlling on the separate issue of whether the right to hire at will includes the right to fire at will. Indeed, the evidence in this case is that Underwood was initially not a member of the fund, and that he was allowed to participate only after he personally requested that Sheriff Waddell look into the matter.

This is not to say that chief deputies are ineligible as a matter of state law from participating in the pension funds, for that issue is not before the Court today. Rather, the point is that the chief deputy position is inadequately described in the statute, and this presents ambiguity in each different subject addressed by the statutory scheme, whether it be pensions, uniforms, or rights upon termination. That ambiguity and apparent inconsistency in the pension fund setting does not support the plaintiff's position in the termination setting.

All that is clear is that the only reference made to chief deputies is one giving sheriffs complete hiring authority over them. As a matter of common law precedent and statutory construction, this power to hire at will includes the power to fire at will. The ambiguity surrounding chief deputies in the pension fund arena and the fact that Hendricks County allowed Underwood to participate in the fund simply cannot override the more persuasive reasoning that applies to the specific termination issues presented today.

■ Additionally, as Sheriff Waddell points out, including Underwood in the fund did not independently convert his at-will status to one requiring good cause. This is so because in order to change the at-will status, independent consideration must be supplied by the employee in return for such permanent employment status. *Ohio Table Pad Co. of Indiana v. Hogan,* 424 N.E.2d 144, 145–147 (Ind.App.1981). By joining the fund, Underwood received a benefit rather than surrendering one. Thus, he did not supply the necessary con-

sideration to alter his at-will employment relationship.

■ Finally, the Court deems it necessary to comment on a possible middle-of-the-road theory that the Court itself raised in its previous Order on this subject. In the Order on the motion to dismiss, the Court noted the possibility that Underwood's status as Chief Deputy could be separated from his status as an employee of the Sheriff's Department. The Court wrote, "Stated another way, plaintiff could have certain interests in his employment position as a colonel in the Hendricks County Sheriff's Department, while at the same time having other interests in his position as Chief Deputy."

Besides the fact that Underwood has not asserted this theory at this juncture, the Court now concludes that such a theory is unworkable for several reasons. First, the facts of this case show that Underwood was not an employee of the Sheriff's Department prior to his non-merit appointment as Chief Deputy by Sheriff Waddell. Had Underwood already been appointed through the merit system and then named Chief Deputy, he would arguably retain his "for cause only" termination rights in his prior position, but such a scenario is not presented today.

Moreover, it would not make sense to give county sheriffs the power to hire a "non-tenured" chief deputy such as Underwood, but then force the sheriffs to retain such individuals on the force in some lesser capacity if the sheriffs determine in their discretion that the particular chief deputy is no longer suitable for this position of trust and confidence.

In conclusion, although the statutory scheme is less than clear, the "complete hiring authority" over chief deputies given to county sheriffs in Section 10 includes the authority to fire at will. This conclusion is supported by the common law meaning ascribed to the right to hire, as well as several different canons of statutory construction. Accordingly, because Chief Deputy Underwood could be fired without any substantive limitations, he lacked a property

interest in his employment and his due process claim must fail.

IT IS SO ORDERED.